## Morley, Appellant, v. Carson.

*· Trusts and trustees—Co-trustees under will—Power to act—
Joint action—Assumpsit—Broker's commission—Negotiations for
sale of trust property—Binding instructions.*

In an action by real estate brokers against co-executors and
trustees under a will for commissions for obtaining the sale of
real property belonging to the estate and held by the defendants
as trustees, binding instructions for the defendants are proper,
where it appears that the arrangement under which the com-
missions were alleged to have been earned was made by the plain-
tiffs with an officer of one of the defendants, a trust company, with-
out any proofs that would justify an inference that the co-
executor and trustee had co-operated with or in any sense or degree
authorized the other executor and trustee to make any bargain
for the sale of the property or as to negotiations concerning any
such sale, or had ratified the same, and particularly where it fur-
ther appeared that such co-trustee had a life estate in the property,
which estate was proposed to be passed by the sale.

Argued March 24, 1913.    Appeal, No. 288, Jan. T.,
1912, by plaintiffs, from judgment of C. P. No. 4, Phila-
delphia Co., March T., 1910, No. 2105, non obstante
veredicto, in case of John C. B. Morley and Edgar W.
Nicholson v. Isabel Frances Carson and The Real Es-
tate, Title Insurance and Trust Company of Philadel-
phia, Executors of the Will of Robert N. Carson, de-
ceased.    Before BROWN, MESTREZAT, POTTER, ELKIN and
MOSCHZISKER, JJ.    Affirmed.

Assumpsit for real estate broker's commission.
Verdict for plaintiff for $2,787.50.
The facts appear by the opinion of WILLSON, P. J., on
motion for judgment n. o. v., as follows:

Plaintiffs are real estate brokers and defendants are
executors and trustees under the will of Robert N. Car-
son, deceased.    Mr. Carson during his lifetime was the
owner of some real estate in Newport, Rhode Island.
By the terms of his will the life estate therein was de-

vised to his wife. In item eight of his will he provided as follows:

"I hereby give to my executors and trustees herein-- after named, and their successors, full power and authority as follows:" (Omitting the directions in regard to personal property.)

"To sell and dispose of all my real and personal estate, except that portion of my real estate devoted to the use of the college hereby created, whenever in their opinion it will be to the benefit of my estate to do so." . . . . . .

After the death of the testator, his widow, the said Isabel Frances Carson, concluded not to occupy the Newport real estate as her residence, and, although there is no evidence in the case that she expressly authorized her co-executor and trustee to put the property in the market for sale, or to negotiate for the sale of her life estate, it seems to be quite clear that the co-executor and trustee did shortly thereafter make plans to sell the property, and did take certain steps with reference to such a transaction.

The plaintiffs claim that in the early part of 1908 they went to the office of the Real Estate, Title Insurance and Trust Company, and there had an interview with. Mr. Rosenberger, who was vice-president and trust officer of the company, with reference to the Newport property.

Without going into full details in regard to what the plaintiffs claim to have taken place, that not being necessary, in view of the manner in which we shall dispose of the case, plaintiffs claim that an arrangement was entered into with Mr. Rosenberger as representing the trust company that they might act for the executors and trustees in disposing of that property, and if possible effect a sale thereof to Mr. Edward C. Knight, Jr., and receive a commission of two per cent. upon any price which might be realized for the property for bringing. about the sale. Plaintiffs claim that Mr. Rosenberger.

was informed by them in their negotiations with him of the fact that they represented Mr. Knight as a prospective purchaser, but that if the sale was made they would have to look to the seller and not to the purchaser for their commissions. They also claim that they did in point of fact bring the property to the notice of Mr. Knight, and that it was through their instrumentality, although the transaction was not concluded by their efforts, that the sale and conveyance of the property was eventually made to Mr. Knight. Most of the material allegations of the plaintiffs upon the matters just referred to were denied by Mr. Rosenberger, but these questions of fact were submitted to the jury, and upon these questions we have no doubt that there was sufficient in the case for the jury to pass upon. We do not, however, enlarge upon these matters, for the reason that in our view of the case it must be disposed of upon the motion for judgment non obstante veredicto. That motion is based upon what is claimed to have been a deficiency of proof to show that the Real Estate, Title Insurance and Trust Company, one of the executors and trustees under the testator's will, had authority, either express or implied, to bind the estate or its co-executor and trustee by the making of any such contract as that upon which the plaintiffs rely.

We have already stated that there is nothing in the evidence which shows that Mrs. Carson ever expressly authorized the alleged contract to be made with the plaintiffs, or authorized her co-executor and trustee to make sale of the Newport property, or, more specifically and possibly more critically, her life estate therein.

We think that, under the language of the will, there is no room for questioning that the real estate devised by the testator was in the hands and under the control of the executors as trustees. We, therefore, must regard them as subject to the limitations and restrictions as to their authority to act which are peculiar to trustees under a will, as distinguished from executors.

Therefore, applying familiar rules to determine their authority, we must conclude that in making the sale of the real estate devised by the testator which they had authority to sell, and in the making of arrangements therefor, they were obliged to act, not separately but together, or at least that in any case where a question might be raised as to their authority, it should be made to appear that both of the trustees were co-operating in and authorizing the sale which might be attempted, and all the necessary preliminary arrangements which should precede such a transaction. In the line of such a view of the case, the jury was in effect instructed that before plaintiffs could properly have a verdict rendered in their favor, the jury should look for and find in the evidence that which would justify the conclusion that Mrs. Carson acquiesced in and in fact approved the action of the trust company concerning a sale of the Newport property, and thereby authorized the arrangement or contract which the plaintiffs claim they had entered into with the trust company through Mr. Rosenberger, its vice-president and trust officer. We fail to see how any other instruction could properly have been given to the jury upon that question.

Of course, that instruction related primarily to dealings concerning the sale of real estate which was in the hands of the executors and trustees with power to sell. So far as the Newport property was concerned, as executors and trustees they had no right to sell anything more than the remainder of the estate after the life estate of Mrs. Carson should be terminated. Her life estate could not by any possibility be sold and conveyed by them in their fiduciary capacity. That was an independent estate over which she alone had control and over which she alone had the right of disposition or sale. The property which the plaintiffs intended to cover by their negotiations was, of course, the entire estate, neither the life estate nor the estate in remainder apart from each other.

Conceding, as must be done, that Mrs. Carson took no actual part in any negotiations which the plaintiffs had with the trust company, and conceding also, as must be done, that, so far as the evidence shows, she had no actual knowledge of what the plaintiffs claim to have passed between them and Mr. Rosenberger, the trust officer, it seems to us that the jury ought not to have been allowed, upon the basis of any evidence that there was in the case to infer that the trust company had any authority to act for its co-executor and trustee in the making of the alleged contract with the plaintiffs, in respect of the estate in remainder in the Newport property, and even less so in regard to the life estate belonging to Mrs. Carson.

We do not find in the proof anything which would justify an inference that she co-operated with or in any sense or degree authorized her co-executor and trustee to make any bargain whatsoever, either for the sale of the Newport property or as to negotiations concerning any such sale.

It would not be difficult to believe that Mrs. Carson did in point of fact rely largely upon the trust company to determine what should be done, in her own interest, and in the interest of the estate. We cannot, however, allow such a probability to take the place of positive evidence showing either prior authority or subsequent ratification of what was done by the trust company. No doubt there may be cases in which the necessary authority from a co-trustee may be inferred from circumstances, and no doubt there may be cases where what is done by one trustee may be of such a trifling or a necessary character that it would be proper to justify it as in the interest of an estate. The present case, however, does not appear to us to be of such a character, and for the reasons which we have stated we must enter judgment in favor of the defendant non obstante veredicto.

Plaintiff appealed.

*Error assigned* was in entering judgment non obstante veredicto.

*Henry P. Brown,* with him *John Arthur Brown,* for appellant.—The contract made by the trust company on behalf of the estate with the appellants for their services in securing a purchaser for the property, represented the performance of a ministerial duty, justified by the common usages of business.  It involved no delegation of discretion and is binding on the estate: Bucklin v. Davidson, 155 Pa. 362; 39 Cyc. 304; Bales v. Perry, 51 Mo. 449; Rossiter v. Assurance Assn., 27 Beav. 377; Graham's Est. (No. 1), 218 Pa. 344; Fesmire's Est., 134 Pa. 67; Bohlen's Est., 75 Pa. 304; Graham v. King, 50 Mo. 22; Jones's App., 8 W. & S. 143; Howard Fire Ins. Co. v. Chase, 72 U. S. 509; Bowes v. Seeger, 8 W. & S. 222; Emlen's Est., 20 Phila. 50; Myers's Est., 205 Pa. 413; D'Invilliers v. Abbott, 4 W. N. C. 124; Filson v. Dunbar, 26 Pa. 475.

*John C. Bell,* for appellee.—Even if there was evidence of "acquiescence" or of the company being "allowed" to act, such evidence is insufficient for the reason that under the law the trustees must act as a unit; and one trustee cannot delegate his discretion to his cotrustee even by written power of attorney: Vandever's App., 8 W. & S. 405; Bohlen's Est., 75 Pa. 304; De-Haven v. Williams, 80 Pa. 480; Daily's App., 87 Pa. 487; Neel v. Beach, 92 Pa. 221; Fesmire v. Shannon, 143 Pa. 201.

PER CURIAM, May 5, 1913:

This judgment is affirmed on the opinion of the learned president judge of the court below entering judgment for the defendant non obstante veredicto.