## Benezet, Appellant, *v.* Hess.

*Executors and administrators—Trusts and trustees—Duty of trustees to act together—Agreement to pay for exchange of real estate—Wills.*

Where a testator appoints three executors with authority to exchange his real estate for other real estate, and in turn again to sell the real estate so acquired, the executors in dealing with the real estate deal with it as trustees, and must act together. An agreement made by two without any participation of the third to pay another person a compensation for effecting an exchange of real estate, cannot be enforced against the estate.

Argued Dec. 18, 1915. Appeal, No. 251, Oct. T., 1915, by plaintiff, from order of C. P. No. 4, Philadelphia Co., June T., 1913, No. 3636, refusing to take off nonsuit, in case of Walter L. Benezet v. Alice Hess and Edward H. Hess, surviving executors of the last will and testatment of David M. Hess, deceased. Before RICE, P. J., ORLADY, HEAD, PORTER, HENDERSON, KEPHART and TREXLER, JJ. Affirmed.

Assumpsit to recover compensation for effecting the exchange of real estate.

AUDENRIED, P. J., found the facts to be as follows:

This action was brought against the surviving executors of David M. Hess for the recovery of a sum of money which the plaintiff alleges was promised him by the defendants as compensation for his services in nego-

tiating an exchange of the Linden apartment house for certain real estate that had belonged to their testator and which they were authorized by his will to exchange for other property. The plaintiff avers that the only condition upon which their promise was predicated was that the defendants should secure title to the Linden apartment house, and that has been obtained by them.

At the trial it appeared that David M. Hess appointed three executors, all of whom qualified. These were the two defendants and Charles F. Ziegler, Esq. Mr. Ziegler acted as executor for some years, but died before this action was begun. By the fifth paragraph of his will Mr. Hess gave his executors power to exchange any of his real estate for other real estate.

It also appeared that in the early part of 1912, Mrs. Lulu J. Boldt owned a building in Philadelphia known as the Linden apartment house. She resided in New Castle, Delaware, and had placed her property in the hands of Jere L. Cresse as her agent to let it out and collect its rental. The work of gathering the rents from the tenants of the building was actually done by Mr. Benezet, who was in Mr. Cresse's employ.

It was testified by the plaintiff that Mrs. Boldt had told him that she wished to dispose of the Linden apartment house, and that somewhere about March 1, 1912, he called at No. 209 South Sixth street, Philadelphia, where Edward N. Hess had his office, and asked him whether he would make an offer for it. Mr. Hess, it appears, mentioned certain property that he would give for it in exchange. Later other properties were offered by Mr. Hess, who seems to have become interested in acquiring the apartment house. At a later interview, when, evidently, he believed that he saw prospects of an exchange being effected, the plaintiff informed Mr. Hess, in the presence of Mr. Ziegler, that he thought he should receive $1,000 for his services in the matter. He says that his demand was not granted in full, but that, after some discussion, Ziegler and Hess said to him, "If you

get the Linden apartment house for us, we will pay you $700." Later he was directed by Mr. Hess to offer Mrs. Boldt sixty houses in June and Markoe streets for her property. When this offer was rejected, Mr. Hess told him to let the matter rest for the time, so as to give Mrs. Boldt a chance to reflect and change her mind. Six weeks or more passed, but the lady showed no signs of accepting the offer communicated to her through the plaintiff, who testified that he then discussed with. Mr. Hess and Mr. Ziegler the chances of the exchange ultimately taking place. He stated that he said to Hess, "I believe that sooner or later she will come back either directly or indirectly, and, if she does, I have come down here purposely to say to you that I want you to pay me the seven hundred dollars, and I shall expect you to take care of me as we arranged," to which Hess replied, "Why, certainly we will, and any deal that is made whereby we secure the Linden apartment house you will be in on it. We will take care of you." The houses that Hess had offered to Mrs. Boldt through the plaintiff belonged to the estate of David M. Hess. Subsequently, it appears, the executors of Mrs. Hess acquired the Linden apartment house from Mrs. Boldt in exchange for the theatre in Wilmington, Delaware, a farm in Montgomery County, Pennsylvania, and a house in Philadelphia, all of which belonged to the Hess estate.

At the conclusion of the plaintiff's evidence the trial judge entered a judgment of nonsuit.

*Error assigned* was order refusing to take off nonsuit.

*Charles H. Edmunds,* for appellant.—In a sense every fiduciary or executor is a trustee with a trust to administer upon and an accountability to render; but as there is a very clear distinction between the authority of an executor and that of a trustee, it is quite clear that because in a sense an executor may have a trust to discharge, he is not thereby a technical trustee nor is a

408, (1916).] Arguments—Opinion of the Court.

trustee who must necessarily have ministerial duties to perform thereby given the same measure of authority as an executor: Hall v. Boyd, 6 Pa. 267; Irwin's App., 35 Pa. 294.

The mere fact that the subject-matter of the contract is real estate does not of itself alter the authority of the executors. A power directing the executors to make sale of real estate works an equitable conversion.

*Henry Budd,* for appellees, cited: Morley v. Carson, 240 Pa. 546.

OPINION BY TREXLER, J., July 18, 1916:

In Morley v. Carson, 240 Pa. 546, in an action by real estate brokers against coexecutors for commissions for obtaining the sale of real estate belonging to the estate and held by the executors as trustees, binding instructions were given for defendants because it appeared that not all of the executors had cooperated with or authorized the bargain for the sale of the property or had entered into the negotiations concerning its sale or had ratified the contract with the plaintiffs.

In the case before us it appears that the defendants were not merely executors engaged in the duty of winding up the estate and distributing it to those entitled to it under the will, but were engaged in duties which ordinarily do not come within the scope of executors, the testator apparently having in view the continuation of the estate and for that purpose giving extraordinary powers to the executors. They were allowed to exchange the real estate of decedent for other real estate and in turn again sell the real estate so acquired. As these were not the ordinary duties cast upon executors but were in the nature of a trust all parties named as executors had to participate in the contract or purchase as well as in the negotiations preceding it or collateral to it.

As trustees, as was stated in Morley v. Carson, supra, "We must regard them as subject to limitations and re-

strictions as to their authority to act which are peculiar to trustees under a will as distinguished from executors": See DeHaven v. Williams, 80 Pa. 480. The fact that they are named as executors does not determine the question. It is the nature of their duties which we must consider in determining whether they were acting as executors or trustees.

There is no evidence that the other trustee had had any part in any of the negotiations with the plaintiffs. There is no evidence that she had any actual knowledge of the contract which is the basis of plaintiff's claim. There was no evidence from which the jury could infer that the executors or trustees who acted in the matter had any authority from her so to do. As trustees they were bound to act together.

Judgment affirmed.