## Klein's Estate

*Randolph Stauffer*, for petitioners; *George B. Balmer*, contra.

MARX, P. J., June 16, 1934.—Two petitioning trustees deny the authority and repudiate the act of their corporate cotrustee in exchanging with itself, in another capacity, assets of this estate. They seek restoration of the assets.

By decree of May 17, 1930, under the will of Conrad Klein, deceased, there came into the hands of Lucy E. Klein, Frederick Hunter Klein, and The Reading National Bank & Trust Company, testamentary trustees, $969,313.38. Before the decree, the cash had been invested in bonds and mortgages, and the trustees accepted those in lieu of cash. On December 10, 1931, the mortgages thus accepted and held aggregated, face value, $615,360. Admittedly, they were investments permitted for trust funds. On that day, as of November 1, 1931, The Reading National Bank & Trust Company, trustee, deposited the mortgages and merged them with assets of other trusts and estates held by it as fiduciary, in two pools, designated "trust pool" and "mortgage trust pool", respectively. In lieu of said mortgages, said bank gave and, as trustee in this estate, took certificates of interest in said "trust pool", of the aggregate face value of $615,360. Sixty-two mortgages were thus liquidated and are reflected in said certificates.

On February 4, 1933, said trustee in like manner took bonds of this trust, of the face value of $180,000, deposited and merged them with said "trust pool", and in lieu thereof gave and took, as aforesaid, certificates of participation in that pool. These bonds remain intact in said pool.

Of the mortgages transposed to the "trust pool", mortgages of a face value of $396,060 remain intact, and of those transposed to the "mortgage trust pool"

$141,719.35 remain intact. Some of the remaining mortgages were foreclosed, the bound real estate was purchased, and title is now held in said pools, to wit: "trust pool", $38,500; "mortgage trust pool", $20,000. The remaining mortgages were paid or collected and the proceeds are held as follows: $2,000 in "trust pool", $17,080.65 in "mortgage trust pool".

The Reading National Bank & Trust Company, since about March 18, 1933, has been and now is under the custody and authority of a conservator under the acts of Congress, its affairs are in process of liquidation, and said pools have been definitely closed and are likewise in process of liquidation.

Certificates issued against the assets held in the "trust pool" are held principally by fiduciaries, a small portion by individual investors. Certificates against the "mortgage trust pool" assets are held totally by individual investors. There are held, to the credit of this trust, as appears by the account, "pool participation certificates, $780,430.90".

By agreement of the three trustees, The Reading National Bank & Trust Company, trustee, was designated custodian of the physical assets of the trust. No separate or special power or authority was given any trustee by the will, nor was any expressly delegated or assigned by any trustee to any other.

The trustees Lucy E. Klein and Frederick Hunter Klein did not join in the aforesaid transposition or liquidation of trust assets and had no knowledge of the same until about February 1933.

". . . the power, interest and authority of co-trustees in the subject matter of the trust being equal and undivided, they cannot like executors act separately, but all must join. . . . And this principle enters into all cases depending on the discretion and judgment of the trustees in contradistinction to acts of a mere ministerial nature. The former requires the concurrence of all the trustees; the latter may be performed by one": Vandever's Appeal, 8 W. & S. 405, 409; Lafferty's Estate, 184 Pa. 502; Philadelphia Trust Co. v. Philadelphia & Reading Coal & Iron Co., 139 Pa. 534; Morley v. Carson, 240 Pa. 546; Benezet v. Hess, 63 Pa. Superior Ct. 408. The effect of these authorities is to hold the act of a single trustee voidable. See also Smilie v. Biffle, 2 Pa. 52. It is not contended that the petitioners joined in the exchange of investments, nor that they had knowledge of it before February 1933. The respondent, conservator, charges constructive delegation of authority by them to The Reading National Bank & Trust Company, trustee. By agreement, the bank became custodian of the assets of the estate. There was no express delegation or assignment of authority. The evidence indicates a reliance upon the bank for the initiative in all matters of discretion. Ministerial duties, like receiving income, paying taxes, checking on fire insurance, distributing income, etc., were left to the bank. Of duties requiring the exercise of discretion, there could be no delegation: Bohlen's Estate, 75 Pa. 304, 316, 321; Fesmire et al. v. Shannon et al., 143 Pa. 201.

Subsequent ratification would of course be possible, but there is no evidence of ratification. From the testimony, we find that the bank, without the joinder or ratification of the other two trustees, exchanged investments and so converted them.

The act having been invalid, the assets, so far as they may be identified in the hands of The Reading National Bank & Trust Company, and the conservator, in any capacity, may be recovered. They were illegally removed from the Klein trust and never became a part of any other trust or pool: 26 R. C. L. 1348, sec. 214; The Farmers & Mechanics National Bank v. King, 57 Pa. 202; Webb v. Newhall, Assignee, 274 Pa. 135; Corn Exchange National Bank v. Solicitors' Loan & Trust Co., 188 Pa. 330. No interests in those assets vested

in other participating owners of the pool. No rights of holders for value intervene.

It is accordingly ordered and decreed that the specific assets transferred from the Klein trust to the trust pool and the mortgage trust pool, capable of identification, be restored and credited against the certificate of participation; that real estate purchased, by foreclosure, or otherwise, with the proceeds of assets so transposed be likewise placed in said Klein trust, and credited against said certificate of participation; and that said certificate of participation, as thus abated, and representing such assets not capable of identification, be retained as an asset of said Klein trust.

Counsel for petitioners may prepare and submit a formal decree, specifying in detail the items and subject matter decreed as aforesaid, which, when approved and found to accord with the aforesaid opinion, will be confirmed nisi and, sec. reg., absolutely.

## Opinion sur exceptions

MARX, P. J., October 27, 1934.—After petition, answer, and testimony, upon opinion filed June 16, 1934, we decreed the return to the trust estate under the will of Conrad Klein, deceased, of assets wrongfully removed or withheld from said estate by The Reading National Bank & Trust Company, one of the trustees. Those assets were merged with other assets in a pool or pools, general trust fund or funds of mortgages and other investments and assets, held and owned by said The Reading National Bank & Trust Company, in trust for the owners of certificates of participation therein. We further decreed abatement of the certificates of participation in such pools, held by said Conrad Klein trust, to the extent of the assets thus restored, and directed the preparation of a decree setting forth in detail the assets thus to be returned and submission of the same for confirmation. Such a decree was prepared and, conforming to our opinion and decree, was accepted and, on August 27, 1934, was entered and filed as the decree of this court. To our findings and conclusions and to our said final decree, Wellington M. Bertolet, conservator of The Reading National Bank & Trust Company, Trustee, excepted. The exceptant has limited his argument, oral and written, to our right to decree the withdrawal of assets from the pools into which they had been thrown and their replacement in the Klein trust, from which they had been wrongfully taken. The exceptions, so far as they go beyond this summary, are dismissed for the reasons fully set forth in our opinion of June 16, 1934.

Under the exception pressed, it is contended (1), that in the hands of the conservator of the corporate trustee all pools are closed, assets have become fixed, and none may be removed therefrom; what was scrambled cannot now be unscrambled; and (2), that a proceeding for the segregation of assets in the hands of the trustee is defective for want of parties, unless all the holders of certificates of participation are brought upon the record of the cause. How involved this question might become is apparent from the fact that the asset now held by the Klein trust is a certificate of participation in the so-called "trust pool". The Klein trust assets had been thrown into that pool and another pool, a "mortgage trust pool". The trustee of the "mortgage trust pool" holds a certificate of participation in the "trust pool". The questions therefore present themselves: (1) Can the Klein trust assets be taken out of the pools? (2) Must the individual holders of certificates of each of these pools be made respondents to this petition and citation? Does their interest in the respective pools give them a vested interest in the individual assets in the pools, requiring them to be heard?

In our opinion of June 16, 1934, we found that the act of the trustee was invalid and the assets, so far as they could be identified, could be followed and recovered. We rest in that conclusion, and in further support of it cite Sadler's Appeal, 87 Pa. 154, 158; Pennsylvania Company for Insurances, etc., v. Ninth Bank & Trust Co., 306 Pa. 148, 154; Freiberg et al. v. Stoddard, assignee, 161 Pa. 259, 261.

Nowhere do we find a specific definition of a "pool" or a limitation of its elements. In the Act of April 26, 1929, P. L. 817, amending section 41(a)1 of the Fiduciaries Act of 1917, authority is given to invest in, inter alia, ". . . trust certificates, issued by a trust company . . . certifying that the holders thereof are respectively the owners of undivided interests in deposits, with such trust company, of securities in which trust funds may be invested."

Relative to the authority of banks and trust companies, the Act of April 6, 1925, P. L. 152, provides: ". . . said companies may assign to their various trust estates participation in a general trust fund of mortgages upon real estate securing bonds . . ." and requires that they ". . . designate clearly on its records the bonds and mortgages comprising such general trust fund, the names of the trust estates participating therein, and the amounts of the respective participations". It stipulates ". . . no estate so participating shall be deemed to have individual ownership in any bond and mortgage in such fund, and the company shall have the right at any time to repurchase at market value but not less than face value any such bonds and mortgages from such fund, with the right to substitute therefor other bonds and mortgages."

The Banking Code of 1933, P. L. 624, sec. 1109, reënacts and enlarges upon these several provisions and expressly provides: "No such estate shall be deemed to have individual ownership of any bond or other security in such pool or fund, but shall be deemed to have an undivided interest in the entire pool or fund."

"The bank and trust company or the trust company shall have the right at any time to substitute for any bond or other obligation secured by mortgage, or for any securities, in a pool or fund, other bonds or obligations secured by mortgages."

It is of the very essence of a pool that individual interests attach to the pool and not to the integral elements of it. The outstanding purpose of a pool appears to be to insure greater safety and continuity of investment. By spreading the investment over many items, there is less danger of entire or serious loss than by limiting it to one. As an item matures and is liquidated another replaces it, thus reducing the likelihood of idle funds. The supervision and maintenance of the items of investments in the pool, the necessity of prompt attention to necessary changes, the very existence of the pool require that ownership in and control over the units in the pool rest in the trustee, holder of the legal title, with equitable rights only in the holders of certificates of participation.

A closed pool is one that has become fixed or stationary, the sole remaining objects being liquidation and distribution. In the absence of express authority, there must be no reinvestment.

The interests of the trustee and the cestui que trust have not changed. The interest and authority of the trustee may pass to an assignee, receiver, or conservator. They, however, as to the trust, represent and act for only the trustee. Whatever may be the status and authority of the conservator under the general banking structure, as to the trust estates he stands in the position and with the

authority of the trustee. He represents the legal title to the assets in the trust.

"It cannot be doubted, that, under some circumstances, a trustee may represent his beneficiaries in all things relating to their common interest in the trust property. He may be invested with such powers and subjected to such obligations that those for whom he holds will be bound by what is done against him, as well as by what is done by him. The difficulty lies in ascertaining whether he occupies such a position, not in determining its effects if he does": Kerrison, assignee, v. Stewart et al., 93 U. S. 155, cited in Appeal of the H. & E. R. R. Co., 22 W. N. C. 417, 418.

In the latter case, the trustees appeared to be under no duty or obligation ". . . . beyond holding the naked legal title to the mortgage . . ." and the trustees neither appeared nor took any part in the litigation. It was held the bondholders were necessary parties, the court, Simonton, P. J., adding: "We do not doubt that, in a proceeding to enforce a mortgage, made to trustees for the benefit of bondholders, with power to the trustees—on the happening of the contingencies specified in the bonds and mortgages—to foreclose, a proceeding for this purpose in their name alone would be regular and binding on the bondholders; but when the suit is for the purpose of having the bonds declared void, and there is nothing in the case to show that the trustees are required, or even authorized to represent the bondholders, we think it would be going a dangerous length, and far exceeding the bounds of a proper discretion, to make a decree against the latter without notice, either actual or constructive, to the latter."

The State Supreme Court, following that decision, said (p. 419): "The trustees hold their office for the benefit and protection of the bondholders, but cannot be regarded as their representatives for all purposes. Of course, if they were, if the relations between them were such as to constitute the trustees general agents or attorneys in fact in all matters relating to the bonds, so that service of process in adverse proceedings would be binding upon the bondholders when made only upon the trustees, the contention of the appellant might be sustained. . . . It may be conceded that for many purposes the trustees do represent the bondholders, and wherever they do the latter are bound by their acts."

It is not here contended that the trustee was the mere custodian of the legal title. The trust was decidedly active. The duties of investment, administration, and settlement, with their incidents, were all lodged in the trustee. The cestui que trust, representing a beneficial interest, reserved none of those powers. He looked for a return on his investment and the eventual return of his principal. He had a right to intervene in all matters affecting the trust and must be made a party to all matters between the trustee and him and all matters affecting the validity of his right. The enforcement of this decree will work the return of the investments and the corresponding reduction of interests in the pools. Presumptively, at least, it means the exchange of dollar for dollar, and will injuriously affect the rights of no one. The record discloses no equitable rights in the holders of certificates of participation which should be protected by making them parties and, consequently, by requiring their appearance. See also Markle's Estate, 5 Dist. R. 47: Madeira v. McMonnies, 8 L. I. 22.

And now, October 27, 1934, the exceptions are dismissed.