HENEAGE, et al. *v.* FEDERAL LAND BANK OF NEW ORLEANS, et al.

No. 39818          December 19 1955          84 So. 2d 137

*Holcomb & Curtis,* Clarksdale, for appellants.

*Roberson, Luckett & Roberson,* Clarksdale; *Beverly C. Adams,* New Orleans, Louisiana, for appellee, The Federal Land Bank of New Orleans.

*Charles L. Sullivan,* Clarksdale, for appellee-trustee, *J. M. Talbot.*

254

HALL, J.

On April 16, 1945, Mrs. Dorothy Callicott Shelby, then a widow, conveyed to J. M. Talbot as Trustee for her four minor children, named above as appellants, and for any other children which might thereafter be born unto her, approximately 760 acres of land commonly known as the New Africa Plantation, situated in Boliver and Coahoma Counties. The trust conveyance is quite lengthy, but it provides that Dorothy should maintain an active supervision over and receive the income from the property conveyed until each child should attain the age of twenty-one years. It also provides that she intends to keep the property free of liens and incumbrances; "however, if an emergency should arise, which in the opinion of said creator and grantor and her said trustee, should make it necessary for the health, comfort, maintenance and support of her said children, the said trustee and his successor or successors are hereby authorized, empowered and directed to encumber the said lands by deed of trust, mortgage or otherwise to provide for such emergency."

At the time of this conveyance the property was rented to Dorothy's brother, C. M. Callicott, and he continued to rent it through the year 1948, paying the rents to Dorothy. Some time after the execution of the trust instrument Dorothy was married to Jack A. Guthrie and they lived in Florida until in the year 1948 when they moved to Clarksdale, Mississippi, in Coahoma

County. They decided that in the year 1949 they would operate this plantation, as well as another one owned by Dorothy which was heavily incumbered and not included in the trust conveyance. All of the children except Carey were then living in the home with Dorothy and Jack and were being maintained by them.

The father of Carey, Robert C. Shelby, and Carey's mother, Dorothy, had been divorced from each other in October 1943. No disposition was made in the divorce decree as to the custody of Carey and he remained in the custody of his mother until February 1948 when a written agreement was entered into between his parents and approved by decree of the Chancery Court of Coahoma County whereby the permanent care and custody of Linda was awarded to her mother and the permanent care and custody of Carey was awarded to his father and the father assumed full responsibility for his maintenance and support and relieved Dorothy of all liability and responsibility in that respect. Thereafter Carey remained in the custody of his father.

After Dorothy and her then husband moved back to Clarksdale in 1948 and decided to operate the plantations during the year 1949 they began to undertake to make arrangements to finance this venture. Guthrie had bought a home in Clarksdale and he and Dorothy were residing therein, and the three daughters of Dorothy were living with them and were being cared for by them. The manager's home on the New Africa Plantation had become uninhabitable and Dorothy's brother, C. M. Callicott, who was then renting the property, had, with Dorothy's knowledge and consent, built a new Manager's home thereon at a cost of approximately $7,700.00 and was claiming a lien on the property for the cost thereof. About 700 acres of the plantation was in cultivation and was not suitable for any other purpose. Farm machinery had to be purchased for operation of the farm. Fertilizer and other necessary supplies were also needed. Taxes

thereon were due. Dorothy had borrowed money with which to pay the premiums on life insurance in which the children were named as beneficiaries and this was due in the amount of about $1,500.00. Dorothy and Guthrie were without funds and owed a large amount of bills incurred in living expenses for themselves and the three children who were living with them. Guthrie had resigned his position in Florida when they moved back to Clarksdale with the view of operating the farm properties. And thus it was that in the early part of January 1949 Dorothy and Guthrie were in debt and without funds. She thereupon conferred with the Trustee with the view of invoking the emergency clause of the trust conveyance.

The Trustee, who is an attorney at law, wrote the Federal Land Bank, explained the situation and sent the trust conveyance for advice as to whether the bank would approve a loan on the property under the circumstances if the title was found otherwise to be good. After a telephone conversation with an attorney for the Land Bank he was advised that the bank would make the loan upon an affidavit as to the necessity therefor and upon the obtaining of title insurance. The Trustee then got in touch with a title insurance company who agreed to furnish the insurance to the bank upon a strong affidavit as to the necessity of the loan. After the usual delays in consummating the transaction the Trustee and Dorothy and her then husband Guthrie executed a deed of trust to the bank in the amount of $21,500.00 on February 15, 1949. The property was operated by Dorothy and her husband for the year 1949 at a loss of between $6,000.00 and $7,000.00 which was paid by Guthrie out of the proceeds of the sale of property which he owned in Louisiana. Dorothy and Guthrie were divorced in January 1950. In March 1950 she married R. L. Stockett and they continued to operate the farms until her death on March 22, 1954. On October 26, 1950, nothing had

been paid on the deed of trust held by the Land Bank, and the bank had been paying the taxes, and Dorothy and Stockett along with the Trustee then executed a new deed of trust to the bank for $24,000.00 which merely brought forward the old deed of trust, with the interest accrued thereon and the taxes advanced by the bank.

About four months after the death of Dorothy this suit was brought by appellants for cancellation of the two deeds of trust upon the ground that no such emergency existed as to authorize their execution. The chancellor found against this contention and dismissed the bill. Hence this appeal.

In A. L. I. Restatement, Trusts, Section 187, paragraph e, it is said:

"If discretion is conferred upon the trustee in the exercise of a power, the court will not interfere unless the trustee in exercising or failing to exercise the power acts dishonestly, or with an improper even though not a dishonest motive, or fails to use his judgment, or acts beyond the bounds of a reasonable judgment. The mere fact that if the discretion had been conferred upon the court, the court would have exercised the power differently, is not a sufficient reason for interfering with the exercise of the power by the trustee."

In Bogert on Trusts and Trustees, Vol. 3, Section 560, it is said: "If a settlor has given his trustee a discretionary power, the court is reluctant to interfere with the trustee's use of the power. * * * As long as the honest judgment and decision of the trustee can be obtained by the cestui on the use of the corpus, no matter how inefficient the cestui may think the trustee is in this respect, the beneficiary has no ground for complaint. He is getting just what the settlor provided for him. Hence chancery takes the position that it will not direct the trustee when and how to use his discretionary power, so long as he is honestly and with some degree of reason employing that power. Even though the court would make

a far different decision from that which the trustee has made or is about to make with regard to the discretionary power, the court will not overrule the trustee or take other action, unless he is refusing to exercise the power at all, or is acting in bad faith, or is acting in a wholly unreasonable and arbitrary manner.''

██ █ The court found that Dorothy and the trustee were the only ones who could determine whether an emergency existed such as to justify the exercise of the emergency provision of the trust, ██ █ that they acted on it honestly and that they had a right so to do, and accordingly he dismissed the bill. We think that the evidence is sufficient to support his findings and conclusions, and that, except as hereinafter stated, the decree should be affirmed.

It is contended by appellants that Dorothy and the trustee had no right to incumber the interest of Carey Shelby, and since by the decree of the court entered in February 1948, the care and custody of Carey was awarded to his father, and he was charged with full responsibility for the support and maintenance of Carey, and Dorothy was relieved of all liability in that respect and was contributing nothing to Carey's maintenance, we think this contention is well taken, except to the extent that the proceeds of the loan in question inured to the benefit of Carey in connection with his undivided one-fourth interest in the trust property, Dorothy never having had any children other than the four named.

On July 17, 1943, Dorothy entered into a written trust agreement with the Bank of Clarksdale whereby there was deposited with said bank securities of the value of $10,000.00 for the benefit of Linda and Carey Shelby. In the trust conveyance to J. M. Talbot, Trustee, which is involved in this suit, there is a specific reference to the trust with the Bank of Clarksdale and a provision to the effect that the share of Carey in the Talbot trust

shall be reduced protanto to the extent of his share in the Bank of Clarksdale trust.

We think the decree of the lower court should be reversed insofar as it affects Carey's interest in the land as affected by the Federal Land Bank deed of trust, but that Carey's one-fourth interest in the land should be reduced in value to the extent that his half of the Bank of Clarksdale trust will reduce it, and also that his interest should be charged with that portion of the Federal Land Bank loan which was used in paying for the manager's home and other improvements, if any, as well as taxes, premiums on insurance on Dorothy's life in which Carey was a beneficiary at the time the premiums were paid, and any other items which are properly chargeable pro-rata against Carey's interest, including taxes paid by the Federal Land Bank subsequent to the loans, and the cause should be remanded to the lower court with directions to take an accounting as to Carey's interest.

Affirmed in part and reversed and remanded in part.

*McGehee,* C. J., and *Roberds, Lee, Holmes, Arrington* and *Ethridge,* JJ., Concur.

GILLESPIE, J., dissenting.

Since I find it impossible to reconcile my views with those of the majority, I am compelled to register my dissent, with deference. It is not my purpose to make any elaborate analysis of the authorities. According to my view, the facts speak for themselves.

The settlor inherited a large fortune, consisting mostly of Delta plantations. By the time the settlor had reached her late twenties, she had experienced an unfortunate domestic career, had four minor children, was an alcoholic, and had largely dissipated her fortune. Against this background, and upon the sound advice of her friend and attorney, she created the trust involved in this case in the following words:

"THIS INSTRUMENT executed this the 8th day of March 1945, between Dorothy Callicott Shelby, hereinafter called 'creator' of Clarksdale, Mississippi, and J. M. Talbot and his successor or successors in trust herein called 'trustee' and those parties hereinafter from time to time mentioned and designated by their appropriate names severally:

"Said creator is the owner of certain lands in the Second Judicial District of Bolivar County, Mississippi, and certain lands in Coahoma County, Mississippi, which are described as follows: . . . (lands described) . .

"It being the intention of the undersigned to convey as aforesaid by this instrument all the farm lands owned by her at the date hereof located and situated in the Second Judicial District of Bolivar County and Coahoma County, Mississippi, except the Plantation known as 'Marie Place' and 'Gum Pond,' the first of which tracts, the Marie Place, having been acquired by deed of conveyance from her late grandmother, Mrs. Flavia C. Park, and the second of which, to-wit: the Gum Pond Place, having acquired by deed of conveyance from her brother, Calliway M. Callicott:

"The considerations for the execution of this conveyance are as follows:

"Said creator and grantor herein is the natural mother of four children whose names are as follows: Suzanne Heneage, Joyce Heneage, Linda Shelby and Carey Shelby; and being of less than the age of thirty years it is possible that she may have other children born unto her; she desires to make provision for all of said children both born and unborn unto her for their maintenance and education and to make it possible that when they shall have attained the ages hereinafter specified they shall have a substantial means of income as well as owning substantial properties; she therefore does hereby grant, convey and deliver unto her said trustee for the use and benefit of her said children all of the said de-

scribed lands, together with a net income from the said lands consisting of rents and profits, after the payment of taxes, insurance and repairs for the subsistence, maintenance and education of her said children until they have attained the ages as hereinafter set out; with the following exceptions, limitations, charges and provisions:

"On July 17, 1943, the said creator and grantor in this instrument conveyed to Bank of Clarksdale, Trustee, $10,000.00 in bonds of the United States of America (or other bonds if United States of America bonds were not available when the said trust conveyance became effective), which said bonds are being held by the creator and grantor by Fletcher Veasey, Executor and Trustee of the Estate of Flavia C. Park, deceased; the said Fletcher Veasey in due course acknowledged receipt of the said instrument and agreed to abide by the terms thereof. In order to equitably set up a trust as contained herein, the said creator and grantor does hereby charge her said children, Carey Shelby and Linda Shelby, with the said principal sum of $10,000.00 and all income therefrom as against the principal of the trust herein created and the income arising therefrom; she desires that all of her children share equally in the trust estate, herein created on July 17, 1943, as aforesaid.

"As her said children shall attain the age of twenty-one years respectively, it is the intention of the said creator and grantor that they and each of them shall have and enjoy their respective share of the entire income consisting of rents and profits after the payment of taxes, insurance and necessary repairs of the said conveyed lands; except that her two children, Carey Shelby and Linda Shelby, shall be and are hereby charged with the income from the $10,000.00 investment hereinbefore mentioned; as the said children of the creator and grantor shall attain respectively the age of thirty years it is her intention, and she so directs her said trustee, to execute by proper conveyance the respective

undivided interest of the said lands to her said children (except that Carey Shelby and Linda Shelby shall be charged with the principal sum of $10,000.00) which if no other children are born unto her the respective interest will be one-fourth undivided interest unless the said undivided interest are increased by the death of one or more of her said children.

"In the event of the death of any of her children without issue, it is her intention and she so grants, conveys and delivers unto her said Trustee, for the use and benefit of her surviving children the undivided interest of that share who shall become deceased before he or she shall have attained the respective ages and herein specified and provided; subject however, to the said trust created for Linda Shelby and Carey Shelby, under date of July 17, 1943, which by the terms thereof in the event of the death of one of these two named children the other named child in that trust agreement or conveyance receives the undivided part of the other, in which event if there is only one survivor between these two said named children, said survivor shall be charged with the full sum of $10,000.00 and the said trustee is directed to execute his said conveyance accordingly. The said creator and grantor intends to keep and maintain an active supervision over the said described and conveyed premises and as long as this condition exists she directs that her said trustee or his successor or successors in trust, shall execute no bond for the faithful performance of his or their duties; should she, the said creator and grantor herein, ever become disabled to the extent that she could not maintain an active supervision over the said property she directs that the said trustee, or his successor, shall be required to execute a good and solvent bond conditioned according to law in a sum commensurate with the net income handled by him, or them. Said creator and grantor hereby directs that her said trustee pay over said in-

come after the payment of taxes, insurance and necessary repairs to her for the beneficiaries named in this instrument, either monthly, annually otherwise as required and in the sound discretion of herself and her said trustee, and upon such payment thereof she shall not be required to account to her said trustee or any other person as to the handling of such payments. The said described and conveyed lands are now encumbered with several deeds of trust in favor of Fletcher Veazey, Executor and Trustee of the Estate of Flavia C. Park, deceased; these deeds of trust were executed by said creator and grantor to secure items of indebtedness owing by her to said Fletcher Veazey; on the 6th day of January, 1946, she will have attained the age of thirty years, at which time under the terms of the last will and testament of the said Flavia C. Park, deceased, she will be entitled to have all her estate now in the hands of the said Fletcher Veazey, including the promissory notes evidencing the said indebtedness and the deeds of trust securing the payment of them delivered to her and the said executor and trustee of the estate of the said Flavia C. Park, deceased, to be finally discharged. When, as and if these items of indebtedness are surrendered to her and the deeds of trust securing the same are cancelled of record, the said described and conveyed lands will then be free of liens and encumbrances and it is the intention of the said creator and grantor to keep said lands free of liens and encumbrances to effectually accomplish the purposes of the trust herein created and provided; however, if an emergency should arise, which in the opinion of the said creator and grantor and her said trustee, should make it necessary for the health, comfort, maintenance and support of her said children, the said trustee and his successor or successors are hereby authorized, empowered and directed to encumber the said lands by deed of trust, mortgage or otherwise to provide for such emergency. The said trustee is fur-

ther authorized and empowered to invest and reinvest from time to time in his discretion the surplus income arising from the said described and conveyed lands and to change such investments by the sale of the securities evidencing the said investments to adequately provide for her said children. On account of the tender ages of the beneficiaries under this trust conveyance, the said creator and grantor realizing that the said trust has a term of at least twenty-five years before it is finally closed and the purposes thereof are accomplished; she therefore realizes that during that time conditions and circumstances may happen and arise whereby it would be to the best interest of the said beneficiaries that the said described and conveyed property be sold and conveyed. In the event of such change of condition or circumstances, her said trustee should deem it wise and expedient and to the best interest of the said beneficiaries to sell and convey the said property by general warranty deed, permission and authority is hereby granted and bestowed upon the said trustee, or his successor or successors, to so sell and convey the said described property by general warranty deed; however, so long as the said creator and grantor is living and capable of consulting with her said trustee, and his successor or successors, the said described and conveyed lands shall only be so sold and conveyed upon her permission thereunto in writing. (This permission and authority may be evidenced by separate instrument or she may join in the said instrument of conveyance.) In the event, however, that the said property should be so sold and conveyed, it is her express direction that the proceeds thereof be invested and re-invested in other safe income-bearing investments or securities. And if so sold and conveyed, only the income arising from such investments or reinvestments shall be used for the maintenance, support, education and sustenance of the beneficiaries named hereunder unless such an emergency

arises as is hereintofore mentioned and provided for in the next preceding paragraph of this instrument. The said creator and grantor does hereby specifically reserve unto herself, her heirs and assigns fifty percent, or one-half, of all minerals, gas and oil under and upon the said and described and conveyed lands.

"In the event of the death, resignation, failure, or refusal to serve on the part of the trustee herein named, the said creator and grantor reserves unto herself the right and power to name a succeeding trustee or trustees, who by virtue of their office, upon due acceptance by him or them, shall be clothed and invested with all the rights and powers herein conferred on the trustee named; however, should said creator and grantor die befor the title shall finally vest in her said named beneficiaries, a succeeding trustee or trustees shall be named by the Chancery Court of Coahoma County, Miss., upon such terms and conditions as to the said Court may seem wise and equitable. The compensation of the said trustee, or his successor or successors, during the term of this trust is hereby fixed at five percent of the net income derived from the said described and conveyed tracts or parcels of land after the payment of taxes, necessary repairs, insurance and other expenses incident to the operation of the farm.

"IN TESTIMONY WHEREOF, the said creator and grantor has hereunto set her hand on this the day and year herein first above and before written.

"DOROTHY CALLICOTT SHELBY"

The trust instrument was duly recorded in the Chancery Clerk's office.

The purpose of the trust was to provide the beneficiaries with an income and to assure their ownership of substantial property when they reached settlement age. Every act of the trustee must necessarily have been directed to the accomplishment of those purposes, and

to those purposes alone. The settlor expressly provided that the trust lands were to be kept free of liens; but the trustee was authorized to encumber the lands if he and the settlor were of the opinion that an emergency had arisen making it necessary to do so "for the health, comfort, maintenance and support of her said children" in order "to provide for such emergency." The trustee and the settlor were the ones to determine if an emergency had arisen, but the emergency was limited to one involving the health, comfort, maintenance and support of the children.

In connection with securing the loan here involved, an application was made to the Federal Land Bank of New Orleans. The Federal Land Bank required title insurance on the plantation before they would make the loan. Application was made to a title insurance company, and it required the trustee, settlor, and set-tlor's husband to make an affidavit in reference to the emergency clause of the trust instrument. This affidavit is in the following words:

### "AFFIDAVIT.

### "STATE OF MISSISSIPPI, COAHOMA COUNTY.

"At Clarksdale this day personally appeared before the undersigned Notary Public in and for said County and State, J. M. Talbot and Dorothy C. Guthrie, known to me as such persons, who after having been by me first duly sworn on their oaths severally say:

"That the said J. M. Talbot is the duly appointed, qualified and acting trustee and the said Dorothy C. Guthrie is the creator of that certain trust conveyance executed by Dorothy Callicott Shelby, now Dorothy Callicott Guthrie, dated March 8, 1945, and recorded in Book 154 at page 268 of the records in the office of the Chancery Clerk of Coahoma County, Mississippi, and in Book M-34 at page 450 of the records in the

office of the Chancery Clerk of the Second Judicial District of Bolivar County, Mississippi.

"That on page 4 of said trust conveyance there is contained the following language and provision:

" 'If an emergency should arise which in the opinion of the said creator and grantor and her said trustee should make it necessary for the health, comfort, maintenance, and support of her said children, the said trustee or successors are hereby empowered and directed to encumber the said lands by deed of trust, mortgage or otherwise to provide for such emergency.'

"Both of the affiants say that such an emergency has arisen and does now appear on the date of the execution of this affidavit and in support of their several discretions and judgments in declaring such an emergency does exist as follows:

"(a) The creator and grantor of the said trust conveyance, Dorothy C. Guthrie, with her husband, Jack A. Guthrie, have full control and custody of three of the children named in the said trust, to-wit: Subanne Heneage, Joyce Heneage and Linda Shelby, all of whom are now in attendance in the Clarksdale City Schools and must be provided with the means of a continued education, maintenance, support and clothing; Suzanne Heneage is of the age of twelve years; Joyce Heneage is the age of ten years and Linda Shelby is of the age of seven years.

"By mutual agreement between the said creator and Robert C. Shelby, her former husband, and by decree duly made and entered by the Chancery Court of Coahoma County, Mississippi, the said Carey Shelby named in the said trust as one of the beneficiaries is now in the care, custody and control of the said R. C. Shelby who by such agreement and decree assumed full responsibilities for his support and maintenance; hence, the said creator no longer believes and is so advised that he is an active participant in the said trust; and

"(b) The husband of the said creator was gainfully employed in the State of Florida until the Fall of 1947, when by force of circumstances it became necessary for them to return to Clarksdale, Coahoma County, Mississippi, said to farm and cultivate the lands owned by the said creator, and described in the application for title insurance to Minnesota Title Insurance Company, of which said application this affidavit is attached and becomes a part thereof, and also to farm and cultivate other lands owned by the said creator in Bolivar County, Mississippi, consisting of approximately 400 acres. (This said 400 acres is encumbered by deed of trust to Equitable Life Assurance Society of the United States in a sum of approximately $17,000.00). At the time the husband of the said creator relinquished his gainful employment in the State of Florida they had every assurance, which they had a right to believe and did believe, that sufficient finances would be advanced to them with which to farm and cultivate all of the lands above mentioned during the year 1949 and probably subsequent years; however, on account of the unfavorable harvesting conditions existing in Coahoma and Bolivar Counties from November 1st until the date of this affidavit the source of that financial aid has become impossible and the said creator and her said husband have been thrown upon their own resources to purchase tractors and other farming equipment, to employ managers, to pay taxes which will be delinquent on February 1, 1949, the usual damages if not paid and in addition thereto the said creator must procure funds to pay approximately $2,200.00 life insurance premiums (all of which said policies are payable to the three named children who are residing with her and for whom she is responsible with her said husband for their maintenance, support and education); the said taxes will amount to approximately $2,500.00; current bills for clothing, food, school supplies and general maintenance and support of the said children amount to approximately $2,000.00.

"(c) Affiants say that it will require the sum of at least $10,000.00 to purchase the necessary equipment to farm and cultivate the said lands during the year 1949 and no person, firm or corporation will loan and advance funds to the said creator and her said husband unless the taxes and special assessments on said lands are paid; and unless all of the farming equipment together with the crops grown on the said lands is offered as security free of all liens and encumbrances; and

"(d) During the year of 1948 a residence was constructed on the lands described in the application for said title insurance at a cost of approximately $10,000.00, none of which has been paid by the said creator, the said trustee or the husband of the said creator and there is therefore a lien of mechanics and materialmen's liens under the laws of Mississippi now existing against and upon the said building whichever enforced would materially damage and reduce the value of the said trust estate and that the said building was completed within six months next prior to the date of this affidavit and may be enforced unless the cost of the building is paid;

"(e) Affiants say that the creator of the said trust and her said husband have no other income than that to be realized and received from their farming operation of the lands owned by the said creator during the year 1949; hence if said provision is not availed of at this time the three active beneficiaries of the said trust, Suzanne Heneage, Joyce Heneage and Linda Shelby, will seriously suffer for lack of proper protection for their health and comfort, maintenance and support and in plain words in the judgment and discretion of the two affiants it is certainly necessary to exercise their discretion to use the said emergency clause of said conveyance.

"(f) True it is said that the said trustee and the said creator are invested with full authority to sell and convey the said lands described in the said trust conveyance

but under the terms thereof, the proceeds are required to be invested in securities and it is a well known fact that there are no securities available at the date of this affidavit which would yield a sufficient income to maintain and support the said creators and the beneficiaries of the said trust on account of the low income yielded by any safe and sound investments; hence in the opinion of affiants an encumbrance against the said lands in order that the creator and her said husband might be able to farm and cultivate the said lands with the other lands owned by the creator herein above mentioned for the year 1949 and succeeding years would more surely provide for the health, comfort, and support of the beneficiaries of the said trust than if the said affiants in their capacities and in the exercise of their powers contained in the said trust conveyance should sell and convey the said lands described therein and undertake to invest the proceeds thereof in other securities.

"This affidavit is made to induce the Minnesota Title Insurance Company to issue a title insurance policy in favor of the Federal Land Bank of New Orleans, the Farm Mortgage Corporation and Land Bank Commissioner to make a loan of $21,500.00 to the said Dorothy C. Guthrie, her husband, Jack A. Guthrie and J. M. Talbot, Trustee.

"/s/ Dorothy C. Guthrie
"/s/ J. M. Talbot, Trustee
"/s/ Jack A. Guthrie

"Sworn to and subscribed before me on this the 31st day of January, 1949.

"/s/ Lorene Meilhardt
Notary Public

"(Seal)

"My Commission Expires October 8, 1950."

These significant facts appear from the affidavit furnished to the title insurance company, wherein the trus-

tee, settlor and settlor's husband were the affiants: (1) Affiants showed a disregard of the terms of the trust and the rights of the vested beneficiaries by attempting to write out of the trust one of the beneficiaries therein, Carey Shelby; (2) Paragraph (b) refers to the trust lands as those of the grantor manifesting an attitude wholly inconsistent with the rights of the beneficiaries, and manifests that the purpose of the loan was not to provide for the health, comfort, support and maintenance of the beneficiaries, but was for the purpose of financing the settlor and her husband, who was not the father of any of the beneficiaries, in a farming venture on the trust lands and on other lands not involved in the trust; (3) paragraph (c) recited that a part of the funds were needed to farm and cultivate "said lands", which referred to trust lands and 400 acres of other lands not involved; (4) paragraph (e) showed that the trust property was being encumbered because the settlor and her husband had no funds, and attempted to connect the health, comfort, maintenance and support of the children to the income of settlor and her husband; and (5) the affidavit shows that only $2,000 was needed for clothing, food, school supplies and general maintenance and support of the children, the beneficiaries of the trust, and the trustee testified that $2,000 was all that was necessary at that time for that purpose.

The application for the first loan here involved made on the Federal Land Bank form was signed by the settlor and the trustee, and showed "purposes of loan" as follows:

| | |
|---|---|
| Pay taxes | $1,900.00 |
| Planters Mercantile Co. on equipment | 7,500.00 |
| Purchase fertilizer | 5,000.00 |
| Purchase additional farm equipment m | 6,000.00 |
| Pay for stock, National Farm Loan Association and loan expenses | 1,100.00 |
| Total | $21,000.00 |

The purposes for which the loan was sought to be obtained as stated in the affidavit to the Title Company was as follows:

To pay life insurance premiums on set-
tlor's life wherein children were benefi-
ciaries                                  $ 2,200.00
Delinquent taxes                    2,500.00
Clothing, food, school supplies and gen-
eral maintenance and support of chil-
dren, beneficiaries of the trust        2,000.00
Purchase necessary equipment to farm
said lands (                        10,000.00
To pay for residence constructed on
trust lands                       10,000.00

After the loan went through, the funds were disbursed by the trustee as follows:

"Amount of Loan          $21,500.00
Less 5% of stock issued by Fed-
eral Land Bank            1,075.00

Net Proceeds Received                $20,425.00

### Disbursements

Bank of Clarksdale, Clarksdale, Miss., Note of
   Dorothy C. Guthrie and interest         1,509.68
Exchange of check of Federal Land Bank       2.50
Tax Collector of Coahoma County         1,119.04
Coahoma County Bank & Trust Company      5,026.05
Calliway M. Callicott, balance indebtedness    8,000.00
Mississippi Title Insurance Company        56.25
T. F. Logan, Jr., Chancery Clerk, recording fee    8.25
Attorneys fees handling and closing loan      250.00
Paid to Dorothy C. Guthrie and Jack A. Guthrie   4,455.73

Total Disbursements                $20,425.00

This loan involved the encumbering of minor children's property ostensibly to .provide for their health, com-, fort, maintenance and support. A comparison of the purposes of loan contained in the application to the Federal Land Bank with the purposes stated in the affidavit furnished the title insurance company, and with the actual disbursements of the funds by the trustee, indicate no purposes consistent with the emergency clause of the trust instrument, unless it be the $2,000 referred to above. It appears from the record that the sum of $1,509.68 paid to the Bank of Clarksdale was to retire a note that settlor gave to secure funds to pay life insurance premiums; but the beneficiaries of the trust had no vested interest in these policies and the policyholder subsequently changed the beneficiary therein and the children never received any benefit from that expenditure. The taxes were $1,119.04, not $1,900.00 as stated in the application, nor $2,500.00 as stated in the affidavit. The amount of $5,026.05 paid to Coahoma Bank and Trust Company was to pay off notes owed by the settlor and her husband, representing money they had borrowed to pay their debts. The item of $8,000.00 paid to Calliway M. Callicott was to pay a debt owing by the settlor, including $7,700.00 for building a manager's residence on the trust lands.

The trustee was a fiduciary charged with the solemn duty of protecting the property subject to the trust and of carrying out the provisions thereof, yet he never did anything to carry out the terms of the trust except to place this loan on the property. The trustee testified that he could not say that he had ever seen the application for the loan except to sign it. The record shows that the trust lands, together with another plantation apparently owned by settlor, had been rented up to the year 1949 for $17,500.00 per year; however, the trustee never saw to it that the taxes and repairs were first paid and the balance paid over to the settlor for the

children.   The trust instrument conveyed the income as well as the lands.   The trustee encumbered the land to pay for the construction of a manager's house on the plantation by the tenant thereof, when he had not only failed to apply the income for that purpose, but did not even know when the manager's house was built.   The house was built in 1947 and the settlor's personal note given the tenant who built it to evidence the cost thereof. The trustee encumbered the trust lands in 1949 to pay the settlor's note which she had given the tenant, and this was done under the theory of exercising his discretion that an emergency existed for the "health, comfort, maintenance and support" of the beneficiaries of the trust.

The opinion quoted from A.L.I., Restatement, Trusts, Section 187.   That section also contains the following statement:   "The extent of the discretion conferred upon the trustee depends primarily upon the manifestation of the settlor.   The language of the settlor is construed strictly so as to effectuate the purposes of the trust.   The mere fact that the trustee is given discretion does not authorize him to act beyond the bounds of reasonable judgment."

What the trustee accomplished by encumbering the lands was the very thing that the trust agreement provided should not be done except for the emergency involving the health, comfort, support and maintenance of the children.

I am unable to find anywhere in the trust document authority for the trustee to encumber the trust lands to pay off the accumulated debts of the settlor and her husband, nor to farm the trust lands, nor to farm other lands not involved in the trust, nor to pay insurance premiums on life insurance policies in which the beneficiaries had no vested right, nor to purchase farm equipment, fertilizer, nor to finance the settlor and her husband in the hazards of a farming venture.

Whatever discretion the trustee used and whatever power he exercised, must have been used and exercised to carry out the terms of the trust, not to destroy it. It was not the mere exercise of a power that was vested in the trustee, but the exercise of a power to accomplish the purposes of the trust. The power to encumber was no greater than the duty to encumber to accomplish the purposes of the trust; therefore, it was not a question of power, but of duty. How can the trust instrument be construed so as to place a duty on the trustee to encumber the trust lands to do what was done in this case? The case of Lyter, et al v. Vestal, et al, (Mo.), 196 S.W. 2d 769, 2 A.L.R. 2d 1375, is the closest case in point cited by the parties.

I do not mean to say that the trustee acted dishonestly or from bad motives, but I do say that he acted completely beyond the scope of any power or discretion vested in him, and that his action in encumbering these lands was unreasonable and constituted an unlawful invasion of the corpus of the trust. It appears that it would be proper to hold the deed of trust valid as to the $2,000.00 for the support and maintenance of the children and the taxes paid on their land, otherwise, I think the deed of trust is void. I think that a judgment should be rendered against the trustee if the deed of trust is not to be cancelled.

I concur with the majority as to the interest of Carey Shelby.