Belknap,
Jan. 6, 1931.

JENNIE T. LORD *v.* MINNIE H. ROBERTS, *Ex'x.*

*Mathews & Varney* (*Mr. Varney* orally), for the plaintiff.

*Arthur H. Wiggin* and *Guy Smart* (*Mr. Wiggin* orally), for the defendant.

ALLEN, J. In respect to a claim against an estate administered in the insolvent course, the statute (P. L., c. 303, s. 15) permits the allowance of only such part of the claim as exceeds the value of collateral security held for it. Hence, if the full title to the property in Maine was validly mortgaged, the disallowance of the claim was required, since the property was worth more than the amount of the claim.

The plaintiff says that the mortgage conveyed only an estate for the decedent's life, the termination of which then and there left the security with no value, and advances argument, first, that if the full title was attempted to be conveyed, yet the power of disposal of the fee given by Abbie's will gave no right to mortgage it, at least under the circumstances, and second, that no more than the decedent's life estate was undertaken to be mortgaged.

The will and mortgage are to be construed with reference to the laws of Maine to whose jurisdiction they were subject, to the extent those laws govern them so as to be in effect a part of them. *Crippen* v. *Laighton*, 69 N. H. 540, 549, 550. But it appears to be conceded that the *lex loci* is the same as the common law in respect thereto, and that law is accordingly to be given recognition only in helping to show what the common law is. Respecting the construction of Abbie's will, the general principle of the common law is well shown to prevail in Maine in the case of *Bodfish* v. *Bodfish*, 105 Me. 166, in which it is said (*pp.* 170, 171): "The question whether a power to dispose of the remainder is annexed to the conventional life estate, depends upon the construction of the instrument under which the power is claimed. In construing wills for the purpose of determining this question as well as all others, the intention of the testator is to have a controlling influence in the interpretation of the clause or phrase especially involved in the inquiry, provided no settled rule of law or principle of sound public policy is thereby violated."

Regarding the claim of the invalidity of the exercise of the power of disposal by a mortgage, one ground is that the power is not such an interest as authorizes a mortgage of the property, and that as the donee of the power had no title beyond a life estate, he could not mortgage the remainder.

It is true that an instrument giving an estate for life to one with remainder to another and also giving the life tenant power to dispose of the interest in remainder does not vest the full title in the latter. This is the law here (*Burleigh* v. *Clough*, 52 N. H. 267; *Langley* v. *Tilton*, 67 N. H. 88; *Bodwell* v. *Nutter*, 63 N. H. 446; *Shapleigh* v. *Shapleigh*, 69 N. H. 577; *Barker* v. *Clark*, 72 N. H. 334; *Brown* v.

*Eastman,* 72 N. H. 356; *Weston* v. *Society,* 77 N. H. 576; *Gage* v. *O'Neill,* 78 N. H. 539; *Fowler* v. *Ladd,* 80 N. H. 44; *Raymond* v. *Goodrich,* 80 N. H. 215), and generally elsewhere, including Maine. See cases cited in 36 A. L. R. 1180-1183. If the power is not exercised, the title stands as though it were not given. During the continuance of the life estate the title to the remainder is as the instrument provides, subject to its defeasance if it is conveyed under the power. It is not necessary here to consider the theory of the power as being short of a right in the property and merely a reservation of control over the title by its donor authorized by him to be exercised by the donee. It is enough to say that the life estate with the power given its owner is "neither illegal nor impossible." *Weston* v. *Society,* 77 N. H. 576, 578. If as a right to convey the property of others it is an unusual arrangement in connection with property, the law nevertheless gives it standing as a reasonable and expedient incident affecting ownership within such bounds for its reservation and exercise as may be established.

The authorities on the point whether power to mortgage is incident to the power to sell and convey, or generally to dispose of, the property are neither numerous nor in accord. *Trigg* v. *Trigg,* (Mo.), 192 S. W. 1011; *Lardner* v. *Williams,* 98 Wis. 514; *Swarthout* v. *Ranier,* 143 N. Y. 499, and *Hamilton* v. *Hamilton,* 140 Ia. 282; s. c. 149 Ia. 321, may be cited in support of the power. In *Hoyt* v. *Jaques,* 129 Mass. 286, the power to sell and convey to secure maintenance was held to include no power to mortgage. But in *Kent* v. *Morrison,* 153 Mass. 137, the power to sell and convey for the donee's comfort "and otherwise as she may think proper" was held to authorize a mortgage.

In *Loud* v. *Poland,* 126 Me. 45 the grantor's wife was given a life estate in property with implied power to convey the full title if necessary for her support. She conveyed, taking a mortgage for her support in return. Her deed was held to convey the full title. The transaction was not in form a mortgage from the donee of the power. But the property was held as security for the purpose for which the power was given. Support was bought as its price and it was security for the support. In substance and form the transaction was not much different from a promise to pay for all needed support what the property might be worth when the promisor died, with the property held as security for the promise. It would seem inconsistent to hold that such a transaction is a valid exercise of the power while a mortgage given by the donee of the power to raise money for support would not be good, unless form is to prevail over substance. The power to

sell and convey for the price of support to be furnished fairly implies the power to mortgage to secure payment of the price.

All cases on the point raise only issues of construction. No substantive rules of law peculiar to powers are pertinent, and particular cases cannot be of emphatic weight as authority. Cases which adopt views of strict construction or turn on the special language of the writing creating the power or on particular circumstances have no impressive value here. *Robinson Company* v. *Drew*, 83 N. H. 459, 462; *Remick* v. *Merrill*, 80 N. H. 225.

The full title may be conveyed by a sale in an exercise of the power although the remainder as property may belong to others. No good reason is presented why, if it may be sold, it may not also be mortgaged, when the instrument creating the power does not expressly or impliedly limit the exercise of the power to a disposal by sale. In the common instance of a life estate with power to sell and convey the full title for the life tenant's support such support is often a continuing demand, and one or a succession of mortgages may be as practical a way to raise money for the support as by a sale of the property in its entirety or from time to time in parcels. The interest of the remainderman would not appear to suffer by a disposal by mortgage more than by a disposal by sale. "Ordinarily, a mortgage to meet pressing needs would be less inimical to the interests of the remainderman than an absolute conveyance." *Hamilton* v. *Hamilton*, *supra*. The remainderman has not much fault to find about it if he finally receives a mortgaged estate instead of no estate at all.

The power here was of "full right to dispose of any part or the whole" of the property. No limitation of a conveyance on a sale is expressed. A mortgage is a form of disposal as much as an unconditional conveyance. In ordinary understanding, if disposal usually means an unreserved and complete grant of title, it does not here when considered with reference to the reasons for the exercise of the power. A limited or conditional disposal being as well adapted as an unlimited one to accomplish the purposes for which the power was given, the testatrix did not intend to discriminate against it, and in the light of the competent evidence it is found that the mortgage is a proper and valid manner of exercise of the power.

The power was not exercised for an unauthorized purpose, and it is not necessary to inquire how far a purchaser from the donee of a power is bound to see that the purpose is an authorized one or that the proceeds of the disposal are used for it. The donee of the power might dispose for his comfort and welfare as well as for his maintenance,

and he was to decide not only what was necessary but also what he might regard as advisable towards those ends. If he acted in good faith and without squandering the proceeds in a purpose to defeat the remainderman, his judgment is not subject to review. *Shapleigh* v. *Shapleigh*, 69 N. H. 577, 581; *Gage* v. *O'Neill*, 78 N. H. 539; *Loud* v. *Poland, supra.* And his good faith does not appear to be assailable. The mortgagee was his adopted daughter and knew she was the remainderman. If it may not here be found from the family situation, her dealings with the mortgagor as disclosed and the knowledge she had of her interests that she knew of the uses to which the money loaned was to be put, yet the burden to show bad faith and misuse of the money was on her, and this burden is unsustained in the absence of any finding about it.

Comfort is more than maintenance (*Shapleigh* v. *Shapleigh, supra; Gage* v. *O'Neill, supra*), and welfare is more than comfort. The purchase of, or the removal of a debt upon, one's home is an act promotive of comfort, and the establishment of a business may be regarded as conducive to one's welfare. Abbie intended by her will that her husband might make such use of her property for his comfort and welfare as he saw fit. Whatever he thought would give him comfort and favor his welfare was authorized, so long as he acted in good faith. As he might buy a home and set up a business with the proceeds of her property, he could own the home and the business without the imposition of any trust or obligation in favor of the remainderman in respect thereto. And giving his second wife a joint ownership with himself of the home is not enough in itself to show an abuse of his authority to secure his comfort from his deceased wife's estate. The latter imposed no restrictions in the event of his remarriage, and if his comfortable relations with his second wife were thought by him to be better secured by making her a joint owner of the home, it was no fraud on the remainderman thus to arrange the title. He had the right to buy a home as his own if it served his comfort, and having exercised that right, he might do with it as he pleased. And it is not of consequence that he made one transaction of the matter.

So far as the will imposed restraint in the exercise of the power by limiting the comfort to such as the decedent might reasonably take in the use of the proceeds of a disposal of the property, his judgment and decision controlled unless he acted beyond any possible range of reasonableness. That he did act unreasonably does not conclusively appear.

If the remainderman did not know how the money raised by the

mortgage was to be used, her participation in the transaction as the mortgagee at least shows acquiescence in the disposal of the property in that manner. And such acquiescence would appear to bar her from now taking an inconsistent position after action has been taken in pursuance of the mortgage. If she thought at the time that the loans might be collected after the mortgagor's death from his estate, that was a mistake which cannot affect the character and effect of her conduct. Acting voluntarily and in a knowledge of the facts, she may not change her position because of a mistaken view of the law. But the effect of her participation and knowledge needs no determination, in view of the result reached that the mortgage was an authorized manner of exercising the power and was given for authorized purposes.

The plaintiff further asserts that the mortgage was not an exercise of the power because it does not expressly refer to the power and because the evidence shows that it was not intended to be exercised. The first reason must fail. "If from the tenor and effect of the deed or will by which title is conveyed the intent to execute the power is inferable, there is a valid execution of the power . . ." 21 R. C. L. 796. See also *Kimball* v. *Society*, 65 N. H. 139; *Weston* v. *Society*, 77 N. H. 576; 49 C. J. 1290, and cases cited.

The second reason depends for its soundness upon the probable intent of the parties to the mortgage as shown by the instrument and other competent evidence presented. If the intent to mortgage the full title is not conclusively shown, it at least is to be found as far more probable than not. The mortgage describes the property as Abbie's homestead, contains covenants warranting full title, and expresses in words no limitation of the estate conveyed.

But the plaintiff counts on the recital referring to the property as that conveyed to the mortgagor by Abbie's will as implying and showing a limitation of the estate mortgaged to the mortgagor's life interest. She says that the will devised no more than a life estate in the property since the power also devised is not to be classified as an interest of ownership therein, and that as the recital expressed only the property devised, the mortgage did not undertake to include an exercise of the power.

The argument credits the average man with being much more literal in the use of language than he is and with greater legal learning than he has. The legal nature of a power as a right other than to property is extremely technical. While not a form of ownership in the property to which it relates, it is a right affecting such ownership.

One having full title is not much more of an owner in a practical way than a life tenant with power to dispose of the remainder. The value of the remainderman's property interest is lessened by the value of the power, and a life tenant with unrestricted power has about as much in value as the owner of the full title. Limitations in the grant of the power may narrow it and lessen its value, but however limited, it is a right of value and possessing in its own grace certain characteristic attributes of property. Whether the right to dispose of property belongs to the owner or to another is not ordinarily of practical importance, in respect to a classification of the right. Within an authorized exercise of the power its donee can do about as much as the owner of the title in any disposal of the property. An owner's right to dispose of an interest in remainder gives the ownership its chief value during the continuance of the antecedent estates. The life tenant has no interest in the remainder as being a part of his estate but aside from that his practical position with reference to the property is mostly the same as a full owner's.

To a layman, for the owner's right of disposal to be an incident of his ownership in the property, while another's right of such disposal is not such an incident, being, although in itself a property right, yet not a right of ownership in the property to which it relates, bears some earmarks of an unimportant difference. Whether the remainder interest is owned by the remainderman subject to defeasance if the power is exercised or whether the life tenant owns it subject to defeasance unless he exercises the power, is a legal issue which would not naturally present itself to the ordinary man in exercising the power, if to one drafting the instrument of disposal. At best the distinction may fairly be called so narrow as not to be expected to receive formally expressed recognition even in instruments in which the terminology of the law is customarily observed, when the occasion for such recognition is neither prescribed nor a matter of definite consideration. The parties to the mortgage, assumed to know the state of the title, are not assumed to know the legal nature and theory of it.

The mortgagor's rights in respect to the real estate were not limited to a life estate, if his technical ownership in it was. While he lived the remainderman's interest was subject to defeat and its possible defeasance lessened its value to the extent the power had value. The life estate with the power attached to it gave the mortgagor all the value the property had upon an authorized disposal. A mortgage of the life estate gave inadequate security in view of the uncertainty of duration of the estate, and whatever title in the property

the mortgagor owned or might dispose of was evidently meant to be subject to it. The recital is well phrased to express this purpose, even if in scrupulous exactness the purpose might have been more specifically stated. As the mortgagor owned the life estate and controlled the title to the remainder while he lived, it was natural to say that the will conveyed the property to him in a statement of his interest not requiring precise definition.

It is suggested that this construction defies the probable understanding of the mortgagee because a mortgage of the remainder barred the loan as a claim against the mortgagor's estate while without such a mortgage the remainder went to her under the will unencumbered and the loan could be thus enforced. In other words, she was better off without than with a mortgage of the remainder interest. The suggestion may be given two answers. One is that the mortgage prevented other disposal of the property, at least except subject to the mortgage. The other is that the suggestion presupposes the mortgagee's knowledge at the time the mortgage was given of the law here in force relative to claims against decedents' estates. No such knowledge is shown and there is no presumption of it. The mortgagee was a layman, the transaction related to property in Maine and the parties lived there at the time of it. It is absurd to assume that the mortgage was made with reference to any local law here.

*Appeal dismissed.*

All concurred.