MILDRED LYTER ET AL., Appellants. v. MARY E. VESTAL ET AL.—No. 39697.—196 S. W. (2d) 769.

Division One, September 9, 1946.

Rehearing Denied, October 14, 1946.

*A. M. Menzi* and *S. Mayner Wallace* for appellants.

458

*Willson, Cunningham & McClellan, George C. Willson* and *James S. McClellan* for respondent the Curators of the University of Missouri.

*Wilbur B. Jones* and *Salkey & Jones* for respondent Security National Bank Savings & Trust Company, Trustee.

VAN OSDOL, C.—Action for a declaratory judgment. Plaintiffs, testator's widow and daughter, trustees and beneficiaries, seek a construction of the will, and a declaration that the widow be allowed $15,000 for "maintenance, comfort and general welfare" from the corpus of a trust estate created by the will of Dr. J. Curtis Lyter, deceased. The trial court rendered a declaratory judgment adverse to plaintiffs, who have perfected this appeal.

Dr. Lyter, testator, by his will made July 7, 1933, bequeathed and devised to his wife, Mildred Lyter, plaintiff (appellant), his household and office furnishings, his personal belongings, certain of his leasehold or license interests, and his residence property in St. Louis. He directed the payment of all inheritance taxes out of his personal estate, so that the various beneficiaries would receive their interests discharged of such taxes. The residue (of value about $223,000) of testator's estate was vested in trust in his wife; in his daughter, Martha (now Martha C. L. Engler), plaintiff (appellant); and in Security National Bank Savings and Trust Company of St. Louis, defendant (respondent), hereinafter referred to as Trust Company. The net income of the trust estate was to be paid, one half to testator's wife; and one half to his daughter, Martha, and any other child or children who survived testator. Further particular provisions were made relating to the apportionment and payment of the income among and to his wife, his child or children, and the descendants of deceased children in various eventualities of being and survivorship so long as his wife or a child should live. During the minority of his child or children, the share of income of each minor child was to be paid to his wife to be used by her,

in her own discretion, to the use and benefit of such child during minority, the better to enable his wife to provide for the support, maintenance and education of such child (or children). The testator made careful directions concerning a child's or children's (or their descendants') income until the child or children should reach the age of thirty years. After a child had reached the age of twenty-one years and until such child reached the age of thirty years, the child's income was to be set aside to the use of the child. And until the child reached the age of twenty-five years, only $500 monthly was to be paid to the child in the event the child's income exceeded such sum. After the child attained the age of twenty-five years and until such child reached the age of thirty years, the child was to be paid only $1000 monthly in the event the child's portion of income exceeded such sum. The excess, if any, of the child's income over the provided maximum monthly payments was to be held, invested and reinvested by the trustees until the child reached the age of thirty years, or until the child married (if married before the age of thirty years), when the trustees were to pay the excess, accumulations and profits to the child, and thereafter the child was to be paid the full amount of such child's proportional monthly income. The testator was strict in specifying the class of securities in which his trustees should invest and reinvest; and provided that the respective beneficiaries should not have the power to sell, assign, pledge, encumber or anticipate their interests in the income or principal of the trust estate. It was provided that, upon the death of testator's widow and of his last surviving child, the trust should terminate and the sum of $25,000 should be paid to testator's sister, Mary E. Vestal, defendant (respondent), providing she survived the termination of the trust; and the balance and residue of such trust estate (including the sum of $25,000, if Mary E. Vestal did not so survive) should be paid, per stirpes, to the "surviving child or children of my said child or children or their descendants," or, if none, that portion of the trust estate remaining should be paid to the Board of Curators of the University of Missouri, defendant-respondent herein, to be invested and expended for the improvement and benefit of the Medical Department of the University.

The final subparagraph of the fifth paragraph of the will is here fully quoted,

"The Trustees in the exercise of their discretion, and upon the written request of my wife, in the event of any emergency, which in the discretion of the Trustees exists, shall have the right to withdraw installments of principal and pay them over to my said wife from time to time for the maintenance, comfort, and general welfare of herself and any minor child or children of mine, and for the education of any of my children under the age of Twenty-one (21) years. The necessity and propriety of such withdrawals, and the

amount thereof shall be determined by the Trustees and their determination shall be final. After the death of my said wife such withdrawals may be made, in like manner, upon the written request of my daughter, Martha.''

Dr. Lyter died October 9, 1937. He was survived by his widow, and by his daughter and only child, Martha. The daughter attained her majority April 26, 1940, and was married in September of that year. No child had been born to the daughter's marriage at the conclusion of the trial of the cause, February 26, 1943. Testator's widow made written request, July 6, 1942, for an advancement of $15,000 out of the principal of the trust estate for the purpose of ''payment of income tax, medical and hospital bills, general household expenses, and other necessary expenses for my maintenance, comfort and general welfare, as those terms are used in said will.''

Plaintiffs petitioned a decree construing the will, and a judgment declaring that, (1) within the meaning of the will, an ''emergency'' exists; (2) independently of the existence of any ''emergency,'' the plaintiff widow is now entitled to receive, under the will, an advancement of $15,000 out of the principal for her proper maintenance, comfort and general welfare; (3) such advancement is within the purpose, intent and meaning of the will and the trustees should be directed to make such an advancement; and (4) whenever the trustees, in their sole discretion, make an advancement out of the principal to the plaintiff widow for her maintenance, comfort and general welfare, the necessity and propriety of any such advancement are, by the terms of the will, final and are not subject to question by any beneficiary.

The corporate trustee, Trust Company, defendant, filed answer and cross bill alleging that a question had arisen as to whether an ''emergency'' exists as that term is used in the will, whereby the trustees may at this time properly pay $15,000 out of the principal of the estate. Trust Company further alleged that the written request of the widow, plaintiff, had given rise to various and conflicting interpretations, and asked the court for advice and information as to the proper interpretation of the will and as to the respective rights and interests of the several parties in and to the trust estate. Board of Curators answered, admitting itself to be a contingent beneficiary under the will; and, disclaiming sufficient knowledge as to other matters alleged in the petition and cross bill, raised the general issue in order to put plaintiff and Trust Company to strict proof thereof.

Having heard the evidence and having been advised in the premises, the trial court declared,

''1. Action of the Trustees in the exercise of their discretion under the will must always be subject to judicial review for possible abuse of discretion . . .

"2. The proof shows no emergency which, under the provisions of the will, would warrant the withdrawal from the principal of the trust of the sum of Fifteen Thousand Dollars as prayed in the petition.

"3. That upon the pleadings and the proof there is no showing which, independently of the existence of an emergency, would justify the Trustees in withdrawing from principal the sum of Fifteen Thousand Dollars for payment to plaintiff Mildred Lyter, as prayed in the petition.

"4. That the requested withdrawal of Fifteen Thousand Dollars from principal as prayed in the petition would not be within the purpose, intent and meaning of the will under the proof in the case."

"The prime rule of construction (of a will) is that the court, without attempting to make a new will or an equitable distribution of the estate, must confine its endeavors to ascertaining the real intent of the testator. To this end the will must be read from its four corners and effect given to all its plain provisions, provided, of course, they are not in violation of law. If there is doubt as to the proper construction of the will, after its own provisions and language are fully considered, then the court has the right, in aid of construction or interpretation, to consider the circumstances surrounding the testator at the time of making it." First Trust Co. v. Myers, 351 Mo. 899, 174 S. W. 2d 378. The real intent of the testator is the universal rule of judicial decision and is required by statute in Missouri (Section 568 R. S. 1939, Mo. R. S. A. sec. 568).

We will first consider the testator's intent as to the exercise of the power of encroachment, and as to the extent of the trustees' discretion in the exercise of the power. It is suggested by plaintiffs that two alternative rights of withdrawal are authorized (in the final subparagraph of the fifth paragraph of the will) because of the use of the word "and" in the language, "The Trustees in the exercise of their discretion, and upon the written request of my wife, in the event of any emergency, which in the discretion of the Trustees exists . . ." It is said there is one right of withdrawal in the trustees "in the exercise of their discretion," and an alternative right of withdrawal "upon the written request of my wife, in the event of any emergency, which in the discretion of the Trustees exists . . ." Plaintiffs say there is an arguable alternative for reading the entire subparagraph independently of the last quoted language, and, they say, the use of the plural words "installments" and "withdrawals" is supportive. As we see it, the language of the paragraph clearly requires that there must exist, in the discretion or judgment of the trustees, an emergency; in such emergency the trustees, in the exercise of their discretion and upon the written request of the wife, have the right to withdraw installments of principal for the maintenance, comfort and general welfare of the widow. The exercise of the power is, in a sense, conditional upon the event of any emergency, which in

beginning

the discretion of the trustees exists. The use of the plural words "installments" and "withdrawals" have no significance, in our opinion, other than to convey the testator's apparent contemplation that the withdrawal of more than one portion of the principal might, in the event of any emergency, be required, from time to time, for the maintenance, comfort and general welfare of the widow. We hold that the trial court correctly ruled the widow is not entitled, independently of the existence of any emergency, to receive an advancement from the corpus of the trust estate.

It is urged by Board of Curators that the *reasonableness* of the trustees' judgment, in the exercise of their discretion in any encroachment upon the corpus, is subject to inquiry by the courts upon the question of whether the trustees have abused their discretion. However, Dr. Lyter expressly directed that, in the exercise of their discretion in making withdrawals of principal for the maintenance, comfort and general welfare of the wife, in the event of any emergency which in the discretion of the trustees exists, the trustees' determination of the "necessity and propriety of such withdrawals, and the amount thereof . . . shall be final." There is a measure or standard within the language of the will by which it might ordinarily be determined whether or not the trustees had made an unreasonable encroachment, namely, "the maintenance, comfort and general welfare" of the widow. Considering this standard apart from the other language of the will, the acts of the trustees beyond the bounds of a reasonable judgment would be controlled by the courts. Vol. II, Scott on Trusts, sec. 187.2, pp. 992-3; and examine the case of First National Bank v. Snead, 24 F. 2d 186, cited by Board of Curators. However, as stated, the will provided the trustees' determination of the necessity and propriety of withdrawals and the amount thereof *"shall be final."* So it seems it has been left to the trustees' discretion whether or not the power will be exercised, and the power is absolutely discretionary in its exercise. Dr. Lyter did not submit the review of the reasonableness of the trustees' exercise of discretion to the courts. Haydel v. Hurck, 72 Mo. 253; Ames v. Scudder, 11 Mo. App. 168, affirmed, and opinion of the St. Louis Court of Appeals adopted by this court, 83 Mo. 189. But it will not be our construction that the trustees in exercising the power are not otherwise subject to control by the courts. Such absolute discretionary power is ordinarily construed as merely dispensing with the standard of reasonableness. Vol. I, Restatement of the Law of Trusts, sec. 187, Comment j, pp. 488-9. In the exercise of the power to encroach upon the corpus, the trustees "function not in the exercise of a mere power, but in the discharge of a trust." Plummer v. Roberts, 315 Mo. 627 at page 659, 287 S. W. 316 at page 327; Comment j, sec. 187, Restatement of the Law of Trusts, supra. And a court will interfere if a trustee acts in a state of mind not contemplated by the

donor of the trust. Thus, the trustee will not be permitted to act dishonestly, or from some motive other than the accomplishment of the purposes of the trust, or to act arbitrarily without an exercise of his judgment. Comment j, sec. 187, Restatement of the Law of Trusts, supra; Vol. II, Scott on Trusts, secs. 187.3, 187.4, 187.5. In these respects, the meaning of the language of the trial court's Declaration Number One, ''Action of the Trustees in the exercise of their discretion under the will must always be subject to judicial review for possible abuse of discretion . . .,'' is clarified.

(It has been held and restated that, if there are two or more trustees, the powers conferred upon them can properly be exercised only by all the trustees, unless it is otherwise provided by the terms of the trust. They all form but one collective trustee. Walker v. James, 337 Mo. 750, 85 S. W. 2d 876; Ames v. Scudder, supra; Vol. I, Restatement of the Law of Trusts, sec. 194, p. 516; 54 Am. Jur., sec. 296, p. 235.)

As we have said, the meaning of the word ''emergency,'' as used in the will, is in doubt. The trial judge stated in a written memorandum, ''The word 'emergency' seems to have been used as somewhat synonymous with 'necessity.' '' We do not have a criticism of such a view, as a general statement. However, the necessity of immediacy of action seems to be integral in the meaning of the word, emergency. The word is defined, ''An unforeseen combination of circumstances which calls for immediate action.'' Webster's New International Dictionary, 2d Ed., p. 837. It appears to us an ''emergency,'' which would call for the trustees' best informed judgment on the question of the necessity, the propriety and the amount of an encroachment upon the corpus of the trust estate, would be a situation where the financial resources of the widow including the widow's income from the trust estate were, in the best informed judgment of the trustees in considering an urgent need of the widow, in such a state of insufficiency or unavailability that the encroachment would be immediately necessary for the widow's maintenance, comfort and general welfare. The word ''emergency'' is not construed as a temporary unavailability of resources to meet a need, which need would, in the judgment of the trustees, in reasonable probability be satisfied, in course, by the widow's resources including her income from the trust estate. The word ''emergency'' is thus construed to the word's full import of meaning, that is, to the full import of the necessity, urgency and immediacy implicit in the meaning of the word. The meaning is so construed in view of the testator's purpose (more fully discussed, infra); otherwise, such purpose may not be accomplished.

A re-reading of the whole will, with a view of the circumstances surrounding the testator when the will was made, more clearly demonstrates the testator's purpose and the intended fullness of import

of meaning of the word "emergency" in connection with the purpose, we think.

Dr. Lyter, an expert in diagnosis, was eminent in his profession. His practice was a lucrative one, and he lived on a nicely balanced scale in keeping with his success as a physician, his income, and a farseeing view toward the future. At his death, his gross estate was approximately $350,000. Additionally, he had invested $152,000 in "insurance trusts" which now yield his wife and daughter, each, about $214 per month. In 1933, Dr. Lyter's wife and daughter were respectively thirty-nine and fourteen years of age. His wife then had other potential resources; her father, now deceased, was possessed of "a substantial estate"; and the record discloses that her mother, who died in 1940, had created a trust from which the widow, plaintiff herein, a beneficiary, received $1642 for the year 1941. Now, recollecting the provisions of the will—it has been seen that Dr. Lyter did not give his residuary estate to his wife and daughter, but gave them the income therefrom. Nor did he give his wife or daughter the power to dispose of his residuary estate, but vested it in ▉▉ them and another in trust. Of course, all would agree that family meant much to Dr. Lyter; and, in his solicitude for his family, he was farseeingly provident. He did not presently shower his bounty absolutely upon the objects of his solicitude and affection. His providence was projected over his wife and daughter *so long as they should live*. But his regard for family was further extended to the "surviving child or children of my said child or children or their descendants." Only in the event there were no person as described in the language we have last quoted would any remainder be vested in Board of Curators. To these ends he vested his residuary estate in trust, and made the painstaking directions and safeguarding provisions we have noticed. However, it is clear that Dr. Lyter contemplated an emergency might arise so urgently demanding the immediate use of moneys additional to all of the resources of the widow, including her income from the trust estate, that it would be necessary for his widow's maintenance, comfort and general welfare to withdraw installments of principal; and, only in the event of such an emergency, he empowered his trustees in their discretion to encroach upon the corpus of the trust estate. (In a case where the donee had a power to dispose of a part or the whole of a residuary estate for his "maintenance, comfort and welfare," it was said by the court, "Comfort is more than maintenance . . ., and welfare is more than comfort." Lord v. Roberts, 84 N. H. 517, 153 A. 1.) It would not be acting in the accomplishment of Dr. Lyter's purpose if the trustees were to ill-advisedly, unnecessarily or improvidently encroach upon the trust estate, or to encroach upon the corpus in the absence of the event of an emergency. The widow's comfort and general welfare in her later years would not be provided by an income barely sufficient for her maintenance. And,

466

in view of the other provisions of his will scrupulously providing and safeguarding an income to the widow (and to his child or children) for life, it could not be gainsaid that Dr. Lyter considered "general welfare" as embracing a sense of security which is enjoyed when conscious that throughout life maintenance and comfort are assured. Now note that with each encroachment upon the corpus, the incomes of both the widow and the daughter are reduced. Further note that with each encroachment the income of the child or children of the daughter or their descendants, in the event of their being and in the event the death of the daughter occurs during the lifetime of the wife, is reduced; and obviously, with each encroachment, the corpora of such contingent beneficiaries' estates in remainder are reduced. In these connections, the purpose of the testator and the consequent intended fullness of meaning of the word "emergency" are disclosed.

It is suggested in Trust Company's brief that the law favors the construction of a will which protects the immediate family of a testator rather than those who may be very remotely connected, and that it'would naturally be assumed that any testator in close and affectionate terms with the members of his family, as apparently is true in this case, "would naturally desire that his wife and only child be properly provided for during the lifetime of each, rather than pass his estate to a corporation, whose contingent interest at the best is very uncertain, and which corporation had no claims upon the generosity of the testator other than an apparent desire to identify his Alma Mater as a residuary legatee, in the uncertain contingency that his heirs in the direct line should fail." The suggestion, to be applicable to our case, should have been more comprehensive. It should have included the observation that ill-advised, unnecessary and improvident withdrawals of principal would endanger fulfillment of the natural desire, suggested by Trust Company, "that his wife and only child be properly provided for *during the lifetime* of each." And it should have more clearly signalized a thought of the "surviving child or children of my said child . . . or their descendants."

█ The questions whether an emergency (at the time of the widow's written request for a withdrawal, or at the time of trial), and whether the requested withdrawal █ would be within the intent and purpose of the will are now moot. Consult Declaratory Judgments, Borchard, 2d Ed., pp. 81-6. The circumstances presently obtaining relating to the widow's resources and her needs must be essentially different from those existing when the widow's request was made, and when the cause was tried. The trustees had not acted in their discretion in granting or refusing the widow's request, perforce the doubt existing as to the will's interpretation. This court having ventured to interpret the will, it is not now doubted that the trustees in the exercise of their discretion will be governed by Dr. Lyter's true intent and purpose disclosed by his will as herein construed.

Declaration Number One of the trial court's judgment as clarified herein, Declaration Number Three, and other declarations not hereinbefore mentioned and which have not been questioned, should be affirmed; and the cause should be remanded with directions that the trial court's Declarations Number Two and Four be set aside without prejudice.

It is so ordered. *Bradley* and *Dalton, CC.*, concur.

PER CURIAM:—The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court. All the judges concur.