Albert STRITE and Commonwealth Trust Co. of Pittsburgh, Executors of the Estate of Lillian D. Cree, deceased,

v.

Edgar A. McGINNES, District Director of Internal Revenue.

Civ. A. No. 30564.

United States District Court
E. D. Pennsylvania.

March 28, 1963.

Henry D. O'Connor, Philadelphia, Pa., for plaintiffs.

John M. Hammerman, Edward S. Smith, David A. Wilson, Jr., Louis F. Oberdorfer, Asst. Atty. Gen., Dept. of Justice, Washington, D. C., Drew J. T. O'Keefe, U. S. Atty., for defendant.

FREEDMAN, District Judge.

This is an action by the executors of decedent's estate for refund of estate

taxes. It is before us on motions for summary judgment filed by both parties.

Decedent, Lillian D. Cree, was the last survivor of three sisters and a brother. On April 15, 1939, the three sisters executed identical wills. Each will in Item Fourth, paragraph (3), established a trust of the residue of the estate, the net income of which was to be paid for life to the other two sisters and their survivor, and thereafter to the brother for life. On the death of both surviving sisters and the brother, the trust estate was to be divided among the testatrix's nephews and nieces after the payment of certain small bequests. The problem before us is created by a power to consume, granted by Item Fourth, paragraph (6), of each will: "It is my desire that my sisters enjoy the benefit of my property to as full an extent as they may require. If, therefore, in the sole judgment of the Trustees hereinafter named it is at any time necessary or advisable in order to provide for the reasonable needs and proper expenses or the benefit or comfort of my sisters or the survivor of them, I authorize, empower and direct them to sell any or all of the said residue of my property as they may think proper and pay over to my sisters or to my surviving sister the proceeds or any part thereof as if it were income."

The sisters and brother, or the survivors or survivor of them, were named as executors and trustees. In the event none of the designated executors or trustees took or continued in office, Commonwealth Trust Company of Pittsburgh was designated executor; and the trustees, in their discretion, if there existed at least one vacancy, were authorized to appoint Commonwealth Trust Company of Pitts-

burgh as an additional trustee with the trustee or trustees continuing in office.

The brother, James W. Cree, Jr., died on November 24, 1941. One of the sisters, Mary W. Cree, died on July 22, 1950, and another sister, Katherine M. Cree, died on May 17, 1953. Lillian D. Cree, as the survivor, became the sole beneficiary of the trusts established under Item Fourth of her sisters' wills. After the death of Lillian on July 27, 1956, the Internal Revenue Service claimed that the power to consume, which she had in the estates of her two sisters under paragraph (6) of Item Fourth of their wills, amounted to a general power of appointment which rendered the entire trusts taxable as part of her estate by virtue of § 2041 of the Internal Revenue Code of 1954. Her executors paid the additional estate tax assessed, amounting to $36,-842.39. Their claim for refund having been denied, they brought this suit to recover the additional tax paid, with interest.

Section 2041(a)(2) provides that there shall be included in the gross estate the value of a general power of appointment created after October 21, 1942.[1] A general power of appointment is defined in § 2041(b)(1) as "a power which is exercisable in favor of the decedent, his estate, his creditors, or the creditors of his estate", but an exception is made by § 2041(b)(1)(A), so that "A power to consume, invade or appropriate property for the benefit of the decedent which is limited by an ascertainable standard relating to the health, education, support, or maintenance of the decedent, shall not be deemed a general power of appointment".[2]

The Regulations, which seek to illustrate the requirements, do not attain

---

1. A power of appointment created by will is, in general, considered to have been created on the date of the testator's death. See Treas.Reg., 26 CFR 20.2041-1(c), as amended, T.D. 6582, 26 F.R. 11861, Dec. 12, 1961.

2. There are two other sections of the Internal Revenue Code where problems similar to ours arise. Section 2055 (con-

cerning deductions for charitable bequests); and § 2056 (concerning the marital deduction). Cases under § 2056 have only limited relevance since the question which arises is not whether an ascertainable standard exists but whether *any* standard exists. In order to qualify for the marital deduction, the surviving spouse must have an *unqualified* power

much clarification, perhaps because of the inherent difficulty of the subject matter. They provide in part: "A power to use property for the comfort, welfare, or happiness of the holder of the power is not limited by the requisite standard. Examples of powers which are limited by the requisite standard are powers exercisable for the holder's 'support,' 'support in reasonable comfort,' 'maintenance in health and reasonable comfort,' 'support in his accustomed manner of living,' 'education, including college and professional education,' 'health,' and 'medical, dental, hospital and nursing expenses and expenses of invalidism'." [3]

■ The extent of the decedent's interest in her sisters' estates under the power to consume must be determined by Pennsylvania law. The taxability of the interest as so established will be determined by Federal law. Morgan v. Commissioner of Internal Revenue, 309 U.S. 78, 60 S.Ct. 424, 84 L.Ed. 858 (1940);[4] Commissioner of Internal Revenue v. Ellis' Estate, 252 F.2d 109, 113 (3d Cir.,

1958); Hoffman v. McGinnes, 277 F.2d 598, 602 (3d Cir., 1960).

■■ The guiding principle in ascertaining the nature of decedent's property interest under Pennsylvania law is that each will is unique and in arriving at its true meaning we must seek out the intention of the testator as it may be found within the four corners of the instrument.[5] In ascertaining the meaning of paragraph (6) of Item Fourth we may not dismiss the language used as "boiler plate", although it is so characterized by plaintiff's counsel, perhaps with some justice. Boiler plate it may be, in the sense that the words may have been chosen indiscriminately by the scrivener without that imaginative understanding which is the hallmark of the skillful draftsman. Executors confronted with substantial tax liability because of the carefree use of words in a will, especially words which never were put to use, must view a scrutiny of their meaning as an academic intrusion into the world of reality. But we deal here with the *power* to consume

to appoint the principal to herself during her lifetime. The power must be one that may be exercised "in all events".

3. The Regulation reads: " * * * A power is limited by such a standard if the extent of the holder's duty to exercise and not to exercise the power is reasonably measurable in terms of his needs for health, education, or support (or any combination of them). As used in this subparagraph, the words 'support' and 'maintenance' are synonymous and their meaning is not limited to the bare necessities of life. A power to use property for the comfort, welfare, or happiness of the holder of the power is not limited by the requisite standard. Examples of powers which are limited by the requisite standard are powers exercisable for the holder's 'support,' 'support in reasonable comfort,' 'maintenance in health and reasonable comfort,' 'support in his accustomed manner of living,' 'education, including college and professional education,' 'health,' and 'medical, dental, hospital and nursing expenses and expenses of invalidism'. In determining whether a power is limited by an ascertainable standard, it is immaterial whether the beneficiary is required to exhaust

his other income before the power can be exercised." 26 CFR 20.2041–1(c) (2).

4. "State law creates legal interests and rights. The federal revenue acts designate what interests or rights, so created, shall be taxed. Our duty is to ascertain the meaning of the words used to specify the thing taxed. If it is found * * * that an interest or right created by local law was the object intended to be taxed, the federal law must prevail no matter what name is given to the interest or right by state law." (pp. 80–81, 60 S.Ct. p. 426).

5. "It was said by Sharswood, C. J., in Fox's Appeal, 99 Pa. 382, that 'every will is to be construed from its four corners to arrive at the true intention of the testator. Decisions upon other wills may assist but cannot control the construction'. This is but one of the hundreds of expressions of the cardinal rule in the interpretation of wills, to find the testator's intent, and by that is meant his actual, personal, individual intent, not a mere presumptive conventional intent inferred from the use of a set phrase or a familiar form of words." Tyson's Estate, 191 Pa. 218, 225, 43 A. 131, 132 (1899), Mitchell, J.

property, regardless whether the power was exercised or lay dormant. The grant of power in the will is the test of taxability, and the reality which governs is the language of the grant rather than the extent of its exercise. Helvering v. Evans, 126 F.2d 270, 272–273 (3d Cir., 1942), cert. den. 317 U.S. 638, 63 S.Ct. 30, 87 L.Ed. 514, rehearing den. 317 U.S. 706, 63 S.Ct. 152, 87 L.Ed. 564. The words employed, however uncritically they may have been chosen, are in legal intendment those of the testatrix. It is from them, within the context of the entire will, that the testatrix's intention must be ascertained. For the courts of Pennsylvania make it clear that evidence extrinsic to the will will not be received, in the absence of patent ambiguity; solely from the will itself—its four corners—must a testator's intention be derived. This has even been expressed in the harsh rubric that it is not really the intention of the testator which the Pennsylvania courts seek out, but rather the meaning of the words which he used in his will. Wright Estate, 380 Pa. 106, 108, 110 A.2d 198 (1955); Collins Estate, 393 Pa. 195, 199, 142 A.2d 178 (1958).

■ Paragraph (6) of Item Fourth of the wills expresses the testatrix's "desire" that the surviving sisters enjoy the benefit of her property "to as full an extent as they may *require*". This is precatory language. It is some indication, however, of the testatrix's intention. The word "require" has been interpreted in context as less than an unlimited power to appoint corpus to one's self.[6] The meaning of the word "require" as the equivalent of "demand" is not to be excluded. The language of the power to consume is then expressed in the authority to invade principal. It is first specified as invasion in order to provide for the "reasonable needs [7] and proper expenses" of the life tenant. We may assume that these are words of limitation to an ascertainable standard relating to the health, education, support or maintenance of the life tenant and fall within the statutory exception. We must then consider the meaning of the remaining words which authorize invasion of principal for "the benefit or comfort" of the life tenant. In Zumbro v. Zumbro, 69 Pa.Super. 600 (1918), the decedent made a devise of his property to his wife for life for her own *"benefit* and *comfort"*, with remainder to their children. In discussing the power granted the widow the court directed its attention to the meaning of the word "comfort" alone. It held that payments made by the widow out of principal to two of the children, for which another child later sought an accounting, were authorized because they were made to satisfy a moral obligation of the testator. In Winthrop Company v. Clinton, 196 Pa. 472, 477–478, 46 A. 435 (1900), it was said that the word *"benefit"* is much broader in meaning than *"support"*. "Now the word 'benefit' is a much broader word than 'support,' and has no such limited meaning as the latter word. It is thus defined in Worcester, 'Advantage; gain; profit;' and its manifest signification is anything that works to the advantage or gain of the recipient." In Helvering v. Evans, 126 F.2d 270, 272 (3d Cir., 1942), cert. den. 317 U.S. 638, 63 S.Ct. 30, 87 L.Ed. 514, rehearing den. 317 U.S. 706, 63 S.Ct. 152, 87 L.Ed. 564,

6. Commissioner of Internal Revenue v. Ellis' Estate, 252 F.2d 109 (3d Cir., 1959), especially where there are remainders over: See Hoffman v. McGinnes, 277 F. 2d 598 (3d Cir., 1960).

7. See Funk v. Commissioner of Internal Revenue, 163 F.2d 796 (3d Cir., 1947), 185 F.2d 127 (3d Cir., 1950), where authority to the wife-trustee to apply income to the settlor-husband or herself, or let it be added to principal, in accordance with their respective needs, in her discretion, was held to be measurable by the equitable standard applied by the New Jersey courts that the trustee must exercise her judgment in good faith and not capriciously or in breach of her fiduciary obligation since what was not needed belonged to principal. In Pittsfield National Bank v. United States, 181 F.Supp. 851 (D.C.Mass.1960), "needs" was held in the affluent circumstances of the parties as intended to provide in case of "want of the means of subsistence, necessity".

a trust authorized payments out of principal to the extent that current income, together with beneficiary's other income, was insufficient to provide properly for the "support, maintenance, *benefit*, and/or education" of the beneficiary and her dependents. Judge Goodrich said that the trustee's strict practice under the trust did not change "the term 'benefit' from its common as well as dictionary concept as meaning whatever promotes welfare; advantage, profit".

The Evans case was followed in Newton Trust Co. v. Commissioner of Internal Revenue, 160 F.2d 175, 179 (1st Cir., 1947), which involved deduction of charitable bequests from gross income. The trustee was authorized to make payments to the wife for her "use and benefit". The court, holding that the remainders to charity were not deductible because they were not sufficiently ascertainable, said: " 'Use and benefit' considered conjunctively or disjunctively connote considerably more than the maintenance of a standard of living * * *".

We may not, of course, determine the meaning of the words "benefit or comfort" dictionary in hand. We must read the words in the setting in which the testatrix has cast them in order to ascertain her individual intention. In this light we must also consider whether the words "reasonable" and "proper", although they literally modify only "needs" and "expenses", may also be applied to "benefit or comfort". We find decisive indication that the paramount objects of the testatrix's bounty were her surviving sisters or sister. The power to consume was conferred only on the surviving sisters or sister, although the brother was designated as a life tenant if he survived them. The brother was given no interest in principal. The nephews and nieces came into enjoyment as beneficiaries only after the death of all the sisters and the brother too, although he was a beneficiary less generously endowed. The subordinate status of the nephews and nieces in the testatrix's testamentary scheme is shown in the provision of Item Third

dealing with articles of household and personal goods and effects. The will confirms the existence in the sisters of a joint estate with right of survivorship in all household and personal goods and effects. Having thus sought to make clear the right of the surviving sisters to this personalty, the will expressly declares that testatrix desires further to assure its ownership by her sisters. To make this assurance effective beyond doubt the will bequeaths all such property to the surviving sisters as joint tenants with the right of survivorship. Only if both sisters predecease the testatrix, a circumstance in which she must make provision against a lapse, does she refer to her nephews and nieces. In that event she bequeaths the property to them. But even here she makes it abundantly clear that they are more or less formal beneficiaries. For she goes on to say that they are to have the benefit of the bequest only if she does not before her death make further distribution of any of this property by letter addressed to them.

It is thus clear that the bequest to the nephews and nieces of the residue is an ultimate provision, one typically made to provide against intestacy. The will emphatically reveals that the sisters are intended to be the main objects of the testatrix's bounty. This is heightened three-fold by the identical provisions which each sister made in her will. Were we now construing this will in the lifetime of a surviving sister it is difficult to believe that a Pennsylvania court would place any grudging limitation on the breadth of the power to consume. The power conferred on the decedent to invade principal for her "benefit or comfort" must therefore be given its broadest meaning. It is not a power limited to her support, but on the contrary, is to be used for her benefit or comfort. Such a power is a taxable general power of appointment under the Regulation and is not within the exception. It is, in the words of the Regulation, "a power to use property for the comfort, welfare or

happiness of the holder of the power [and] is not limited by the requisite standard."

It is true that under Pennsylvania law the decedent's power could only be exercised in good faith and not simply to subvert the will's provision of an ultimate gift to nephews and nieces.[8] This requirement does not, however, restrict the life tenant's consumption of principal exclusively to support and maintenance. There is present here a power to consume which extends beyond the statutory exception of an ascertainable power for health, education, support or maintenance, even though it is confined within the outer reaches of the judicial limitation of good faith. The judicial requirement is that the estate must not be depleted "for the mere purpose of defeating the testator's intention, or of preferring certain heirs or beneficiaries"; in all other cases the Pennsylvania courts will be slow "to condemn expenditures as being contrary to the power lodged" in the holder of the power. Zumbro v. Zumbro, 69 Pa.Super. 600, 603 (1918). Manifestly, Pennsylvania's equitable doctrine does not automatically bring all powers to consume within the statutory exception from taxability under § 2041. Even if the judicial requirement of good faith in the exercise of a power to consume creates an "ascertainable standard", in this case it would not be a standard which relates to the power holder's "health, education, support or maintenance". There are areas of expenditure beyond support and mainte-

nance which do not cross the line of good faith. See Zumbro v. Zumbro, supra. This decedent clearly had such additional power. The enjoyment of that power, unexercised though it was, subjected the decedent's estate to taxation as the owner of a general power of appointment, one which did not fall within the exception delineated by § 2041(b)(1)(A).

The three Supreme Court decisions dealing with the deductibility of gifts over to charity under what is now § 2055 of the Revenue Code of 1954, shed some light on our problem. They are not, of course, decisive for us. For they deal with a greater requirement than an ascertainable standard. The standard there is one which is presently ascertainable in order that the value of the gift in remainder to the charity may presently be determined. In Ithaca Trust Co. v. United States, 279 U.S. 151, 49 S.Ct. 291, 73 L.Ed. 647 (1929), the life tenant's authority to invade principal to the extent "that may be necessary to suitably maintain her in as much comfort as she now enjoys" was held to establish a suitably definite standard and the charitable deduction was permitted. On the other hand, in Merchants National Bank of Boston v. Commissioner of Internal Revenue, 320 U.S. 256, 263, 64 S.Ct. 108, 112, 88 L.Ed. 35 (1943), it was held that the power of invasion of principal was too broad and speculative to permit a deduction for the charitable bequest over, even though the widow's previous mode of life was modest and her own resources sub-

8. Tyson's Estate, 191 Pa. 218, 43 A. 131 (1899); Fassitt v. Seip, 240 Pa. 406, 87 A. 957 (1913); Rumsey's Estate, 287 Pa. 448, 135 A. 119 (1926); Endsley v. Hagey, 301 Pa. 158, 151 A. 799 (1930); O'Brien Estate, 381 Pa. 322, 112 A.2d 178 (1955); Zumbro v. Zumbro, 69 Pa. Supcr. 600 (1918); Commissioner of Internal Revenue v. Ellis' Estate, 252 F.2d 109 (3d Cir., 1958); Price v. Rothensies, 67 F.Supp. 591 (E.D.Pa.1946). The purpose and extent of the rule are well expressed in Tyson's Estate, supra, where Mr. Justice Mitchell said: "The extent of the widow's consumption of the estate was within her own control. Her decision was without appeal, but it must have been honestly reached in accordance with the purpose the testator intended, and not merely colorably to defeat his will. She had power to carry out his intentions by sale, transfer and consumption of the proceeds in such a way as to leave nothing at her death. But a transfer with intent not to consume for herself, but to preserve for others after her death, and to change the beneficiaries after her from those chosen by her husband to others of her own selection would be a fraud on the testator and his will." (191 Pa. pp. 226–227, 43 A. p. 133).

stantial. There the invasion of principal was authorized "for the comfort, support, maintenance, and/or happiness" of the wife, "and it is my wish and will that in the exercise of its discretion * * * my said trustee shall exercise its discretion with liberality to my said wife, and consider her welfare, comfort and happiness prior to claims of residuary beneficiaries under this trust." [9] In Henslee v. Union Planters National Bank, 335 U.S. 595, 69 S.Ct. 290, 291, 93 L.Ed. 259 (1949), rehearing den. 336 U.S. 915, 69 S.Ct. 601, 93 L.Ed. 1078, the power was held too broad to permit a charitable deduction, where authority was given to invade principal for the "pleasure, comfort and welfare of my mother", with another provision that "The first object to be accomplished in the administration and management of my estate * * * is to take care of and provide for my mother in such manner as she may desire", with direction to the trustees to manage the estate "primarily for this purpose".

Our Brother Kraft recently reviewed the right to deduction for charitable remainders in In re Bartlett's Estate, 153 F.Supp. 674 (E.D.Pa.1957). There the trustees were authorized to invade principal to such extent as they in their sole discretion considered to be "for the best interest" of the life tenant "during illness or emergency of any kind." Judge Kraft held that the extent of the power to invade principal was not measurable by any presently ascertainable standard.

These cases reveal the extent of variation in the language of powers to consume and the significance which must be attributed to the individual language used in arriving at the ultimate determination of the intention of the individual testator in the particular case.

Plaintiff relies heavily on the recent case of United States v. Powell, 307 F.2d 821 (10th Cir., 1962), where a refund of estate taxes was allowed. There the trustee was authorized to invade principal "for the maintenance, welfare, comfort or happiness of the * * * wife, * * * or * * * daughters, * * * or for the education * * * of said daughters, * * * provided that the Trustee shall deem that the purpose for which the payments are to be made, justifies the reduction in the principal of the trust properties." It was held that the trustees were limited by an external standard which the courts of Kansas (whose law was involved) would enforce in the exercise of their equity powers. The question there, however, was whether the power of the decedent as grantor-trustee to invade the trust corpus for the happiness of his wife and daughters constituted a power to alter and amend an inter vivos trust within the meaning of § 811(d)(2) of the Revenue Act of 1939. Moreover, the decision was rendered after a trial on the merits in which evidence was taken regarding the unusual circumstances of the parties, and after a finding of fact that the trust instrument did not intend the subjective pleasure or "delight" of the wife or daughters, but merely distributions necessary to maintain them according to the conservative mode of life to which they had been accustomed. (See p. 823). This finding was in harmony with the provision that the trustee's power to invade principal was subject to the limitation that the trustee deemed the purpose one which justified reduction in principal and tied in with another provision, not expressly adverted to by the court, that in making investments the protection of principal was to be deemed more important than securing a higher rate of income.

### ORDER

AND NOW, March 28, 1963, the motion for summary judgment of Albert Strite and Commonwealth Trust Company of Pittsburgh, Executors of the Estate of Lillian D. Cree, deceased, plain-

---

**9.** The court said: "Introducing the element of the widow's happiness and instructing the trustee to exercise its discretion with liberality to make her wishes prior to the claims of residuary beneficiaries brought into the calculation elements of speculation too large to be overcome * * *".

tiffs, is denied; and the motion for summary judgment of Edgar A. McGinnes, District Director of Internal Revenue, defendant, is granted.