Horace S. MILLER, Jr. and Isabel M. Campbell, Co-Executors of the Estate of Isabella Steel Miller, Deceased,

v.

UNITED STATES of America, Appellant.

No. 16739.

United States Court of Appeals Third Circuit.

Argued Nov. 22, 1967.

Decided Jan. 2, 1968.

Jonathan S. Cohen, Dept. of Justice, Tax Division, Washington, D. C. (Mitchell Rogovin, Asst. Atty. Gen., Lee A. Jackson, David O. Walter, Attys., Dept. of Justice, Gustave Diamond, U. S. Atty., W. Wendell Stanton, Asst. U. S. Atty., Washington, D. C., on the brief), for appellant.

Joseph B. Mitinger, Mitinger & Mitinger, Greensburg, Pa., for appellees.

Before HASTIE, FREEDMAN and VAN DUSEN, Circuit Judges.

## OPINION OF THE COURT

FREEDMAN, Circuit Judge:

This case presents the recurring problem of the taxability as part of a decedent's estate of a power of appointment over trust corpus which the decedent possessed but did not exercise. Here, as in other such cases, the legal question is mixed with the apparent injustice of the imposition of an estate tax on a power which was never exercised and which would clearly have been exempt from tax as a limited power had the words of grant been more narrowly chosen.

Decedent's husband created by his will a residuary trust whose net income was to be paid to decedent for life with remainder on her death to their children. The testamentary trust contained a provision authorizing the trustees, who were the decedent and a trust company, to make disbursements out of the principal of the trust to decedent "at such times and in such amounts as my said Trustees, in their discretion, shall deem necessary or expedient for her proper maintenance, support, medical care, hospitalization, or other expenses incidental to her comfort and well-being."

Decedent died three years after her husband's death. She had lived modestly, had substantial assets of her own and in the period following her husband's death she had not received nor had she requested any payment from the corpus of the trust. Her executors did not include the value of the trust in her gross estate for federal estate tax purposes. The Commissioner of Internal Revenue, however, assessed a deficiency on the ground that the trust was property over which the decedent had held a general power of appointment at the time of her death and that it therefore was includable in her gross estate under § 2041 of the Internal Revenue Code of 1954. The executors paid the assessment and brought this suit for refund in the district court. On cross-motions for summary judgment and a stipulation of facts the district court entered judgment for the executors. 267 F.Supp. 182 (W.D. Pa.1967). The United States has appealed.

The standard of taxability of a general power of appointment, which includes a power to consume, and the extent of the exceptions thereto are explicitly laid down in § 2041 of the Code. Section 2041 (a)(2) provides that the value of the gross estate of the decedent shall include the value of property with respect to which the decedent at the time of his death possesses a general power of appointment created after October 21, 1942. A general power of appointment is defined in subsection (b)(1) as "a power which is exercisable in favor of the decedent, his estate, his creditors, or the creditors of his estate", but an exception is made by subsection (b)(1)(A) that a "power to consume, invade, or appropriate property for the benefit of the decedent which is limited by an ascertainable standard relating to the health, education, support, or maintenance of

the decedent shall not be deemed a general power of appointment."

The Regulations [1] provide that a power is limited by an ascertainable standard "if the extent of the holder's duty to exercise and not to exercise the power is reasonably measurable in terms of his needs for health, education, or support (or any combination of them)", deeming maintenance to be synonymous with support.

It is by this measuring rod that we must judge whether the trust provision here falls within the exception or outside it. It is clear, and indeed it is conceded by the government, that the power to consume for decedent's "proper maintenance, support, medical care, hospitalization", as the trust provides, if there were nothing more, would bring the case clearly within the exception from taxability. The dispute, therefore, revolves around the remaining phrase, "or other expenses incidental to her comfort and well-being."

We had occasion not long ago in Strite v. McGinnes, 330 F.2d 234 (3 Cir. 1964), affirming 215 F.Supp. 513 (E.D.Pa. 1963), cert. denied, 379 U.S. 836, 85 S.Ct. 69, 13 L.Ed.2d 43, rehearing denied 379 U.S. 910, 85 S.Ct. 185, 13 L.Ed.2d 182 (1964), to consider a problem quite similar, although not precisely identical. There the power to consume was exercisable "at any time necessary or advisable in order to provide for the reasonable needs and proper expenses or the benefit or comfort" of decedent, and there were indicia in the will itself that the decedent had been the main object of the testatrix's bounty and that the power to invade principal should therefore be given its broadest meaning.[2] We held that the power to consume when neces-

sary or advisable for the decedent's "benefit" fell outside the exception and we therefore found it unnecessary to decide the effect of the word "comfort",[3] which the district court had held was also beyond the exception.[4]

The extent of the decedent's interest in the testator's estate under the power to consume must be determined by Pennsylvania law, although the taxability of the interest will be determined by federal law.[5] In ascertaining the extent of decedent's property interest under Pennsylvania law we recognize its guiding principles that each will is unique and that the intention of the testator must be found within the four corners of the instrument.[6] We must determine this meaning uninfluenced by our present knowledge that decedent died without ever having sought to invade the principal of the trust and we must view the trust in the same way that a Pennsylvania court would have done in considering an application by the decedent for the consumption of principal in her lifetime. Of course, we may not disregard the plain meaning of words used in a testamentary trust on any representation or plea that they may have been selected without a discriminating understanding of their meaning. In Strite v. McGinnes the district court said: "In ascertaining the meaning of [the language of the power to consume] * * * we may not dismiss the language used as 'boiler plate', although it is so characterized by plaintiff's counsel, perhaps with some justice. Boiler plate it may be, in the sense that the words may have been chosen indiscriminately by the scrivener without that imaginative understanding which is the hallmark of the skillful draftsman. Executors confronted with substantial tax liability because of

1. 26 C.F.R. § 20.2041.1(c) (2).

2. 330 F.2d at 239, quoting 215 F.Supp. at 517.

3. 330 F.2d at 240.

4. 215 F.Supp. at 516–518.

5. Morgan v. Commissioner of Internal Revenue, 309 U.S. 78, 60 S.Ct. 424, 84 L.Ed.

585 (1940); Strite v. McGinnes, 330 F.2d at 238–239, 215 F.Supp. at 515; Hoffman v. McGinnes, 277 F.2d 598, 602, 90 A.L.R. 2d 405 (3 Cir. 1960). See also Commissioner of Internal Revenue v. Estate of Bosch, 387 U.S. 456, 87 S.Ct. 1776, 18 L. Ed.2d 886 (1967).

6. Strite v. McGinnes, 330 F.2d at 238, 215 F.Supp. at 515, and cases there cited.

the carefree use of words in a will, especially words which never were put to use, must view a scrutiny of their meaning as an academic intrusion into the world of reality. But we deal here with the *power* to consume property, regardless whether the power was exercised or lay dormant. The grant of power in the will is the test of taxability, and the reality which governs is the language of the grant rather than the extent of its exercise." 215 F.Supp. at 515–516.

The district court, applying the rule of *ejusdem generis,* considered "incidental" as the significant word, so that the phrase "or other expenses *incidental* to her comfort and well-being" should be made to read as if it had provided for expenses incidental to her maintenance, support, medical care or hospitalization, and thus "comfort or well-being" was to be limited to such items.

■■ This construction is erroneous. The word "incidental" relates to the decedent's "comfort and well-being", and not to her maintenance, support, medical care or hospitalization. To read the phrase "or other expenses incidental to her comfort and well-being" as limited by what has gone before would cut down to meaninglessness the words "comfort and well-being". It is impossible to adopt such a meaning in reading the language, as we must, as a Pennsylvania court would have done if decedent in her lifetime had sought to exercise the power to consume granted by her husband, rather than with the eyes of a reversioner's lawyer poring over the language of a condition subsequent. An artificial rule of construction such as the doctrine of *ejusdem generis* has very limited ap-

plication [7] and is to be exercised with caution, and in any event is applicable to a will only where the intention of the testator is ambiguous.[8] The words "comfort and well-being" must be given their ordinary meaning and as such go far beyond support and medical and hospital care. In *Strite* we found it unnecessary to determine the meaning of "comfort" in the phrase "benefit or comfort".[9] Here "comfort" is joined with "well-being" and without referring to dictionary definitions or authorities which have considered one or the other of the words,[10] it is clear that much like the words "benefit or comfort" in the *Strite* case, they conferred a power to consume which extended beyond the statutory exception of an ascertainable power for health, education and support. Indeed, the Regulations make this plain beyond doubt. They provide: "A power to use property for the comfort, welfare, or happiness of the holder of the power is not limited by the requisite standard." [11]

The power to consume in the present case therefore exceeds the limit fixed for exception from a general power of appointment which is taxable to the estate of the holder of the power.

■■ Appellant argues that in any event the power is not taxable to the decedent's estate because it falls within the exception of § 2041(b)(1)(C)(ii) as a power not exercisable by the decedent except in conjunction with a person "having a substantial interest in the property, subject to the power, which is adverse to the exercise of the power in favor of the decedent". Here a trust company was cotrustee with decedent. The power to invade principal was grant-

7. See McGlathery's Estate, 311 Pa. 351, 166 A. 886 (1933). See also Durnin v. Allentown Fed. Savings & Loan Assoc., 218 F.Supp. 716, 719 (E.D.Pa.1963).

8. Burleigh Estate, 405 Pa. 373, 175 A.2d 838 (1961).

9. 330 F.2d at 240. See also Estate of Zentmayer v. Commissioner of Internal Revenue, 336 F.2d 488, 491 (3 Cir. 1964).

10. See Strite, 215 F.Supp. at 516–517. See also Lord v. Roberts, 84 N.H. 517, 153 A. 1 (1931), construing "comfort and welfare".

11. 26 C.F.R. § 20.2041–1(c) (2).

ed to the trustees jointly [12] and not to the decedent alone, and it was exercisable "at such times and in such amounts as my said Trustees, in their discretion, shall deem necessary or expedient. * * *"

The corporate trustee had no substantial interest in the property of the trust adverse to the decedent's exercise of the power. Its only interest was in the administration of the trust as trustee; it was not a beneficiary of the trust and would have lost no right to obtain any property that might have been turned over to the decedent on the exercise of the power. The trust company's right to compensation for serving as a trustee, even though dependent to some extent on the amount of the corpus of the trust, is not a substantial adverse interest within the meaning of the statute. The substantial adverse interest must be one, as the statute declares, "in the property itself" and not an interest in continuing in the office of trustee. Otherwise there would be no need to describe, as the statute does in the subdivision (ii), the existence of a substantial adverse interest, for subsection (C) which speaks of a power exercisable by a decedent only in conjunction with another person, would alone be enough. Subdivision (ii) has limited this, however, to cases where the co-trustee, in addition to its status as a co-trustee and the incidental compensation as such, has a substantial interest in the property which is adverse to the beneficiary.

The judgment therefore will be reversed and the cause remanded with direction that judgment be entered in favor of the United States. In entering such judgment, as was conceded at the oral argument, the executors should not be allowed a credit against their liability for funeral expenses since it has already been granted them in the uncontested portion of the estate.

12. See Ranck's Estate, 381 Pa. 332, 112 A.2d 105 (1955); Morley v. Carson, 240 Pa. 546, 87 A. 713 (1913); 20 Purdon's Pa.Stat.Annot. §§ 320.936, 320.941.